WYMER v HOLMES

YAHRLING v BELLE LAKE ASSOCIATION, INC

Docket Nos. 76806, 77588. Argued November 14, 1986 (Calendar Nos. 9-10). Decided September 24, 1987.

Kenneth D. Wymer, as the personal representative of the estate of Jennifer I. Wymer, deceased, brought a wrongful death action in the Tuscola Circuit Court against James Holmes and Coleen Holmes, alleging negligence and attractive nuisance with respect to a pond at the home of defendants in which his six-year-old daughter, Jennifer, drowned. The court, Patrick R. Joslyn, J., entered judgment for the defendants on a jury verdict of no cause of action. The Court of Appeals, SHEPHERD, P.J., and V. J. BRENNAN and JOBES, JJ., reversed and remanded in an opinion per curiam, holding that the recreational land use act was inapplicable to social invitees because such application would not serve the legislative intent to promote tourism or open up private lands to public use (Docket No. 76457). The defendants appeal.

Greg Yahrling brought an action in the Macomb Circuit Court against the Belle Lake Association and individual lot owners in the Belle Lake Estates subdivision, seeking damages for personal injuries incurred when he dove into Belle Lake while attending a birthday party. The court, John Roskopp, J., granted summary judgment for the defendants on the ground that under the recreational land use act the defendants were immune from liability for ordinary negligence. The Court of Appeals, J. H. GILLIS, P.J., and BRONSON and M. J. KELLY, JJ., affirmed in an opinion per curiam (Docket No. 77063). The plaintiff appeals.

In an opinion by Justice ARCHER, joined by Chief Justice

REFERENCES

Am Jur 2d, Amusement and Exhibitions §§ 1 *et seq.*, 68.

Am Jur 2d, Parks, Squares, and Playgrounds §§ 43 *et seq.*

Effect of statute limiting landowner's liability for personal injury to recreational user. 47 ALR4th 262.

See also the annotations in the Index to Annotations under Amusements and Exhibitions; Recreation.

RILEY and Justices LEVIN, BRICKLEY, CAVANAGH, and BOYLE, the Supreme Court *held:*

The recreational land use act is intended to apply to large tracts of undeveloped land suitable for recreational uses, not to urban, suburban, and subdivided lands, and thus is not applicable in these cases.

1. The recreational land use act provides no cause of action against the owners of private land for injury arising out of the outdoor recreational use of the land by a person who is on the land with or without permission of the owner and who does not pay a valuable consideration for the recreational use, unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner. The purpose of the act is to encourage owners of private tracts of land, which are difficult to defend from trespassers and to make safe for invited persons engaged in recreational activities, to make land and water areas available to the public for outdoor recreational activities by limiting the owners' liability toward persons entering upon the land for such purposes.

2. The act redirected the focus of landowner liability from the status of the user of the property, making the purpose in going on the land and the character of the land central to the determination of the owner's liability. The need to limit owner liability does not arise in cases of recreational facilities which are relatively easy to supervise and monitor for safety hazards.

*Wymer,* affirmed.

*Yahrling,* reversed.

144 Mich App 192; 375 NW2d 384 (1985) affirmed.

145 Mich App 620; 378 NW2d 772 (1985) reversed.

Justice GRIFFIN took no part in the decision of this case.

1. NEGLIGENCE — RECREATIONAL LAND USE ACT.

The recreational land use act applies to large tracts of undeveloped land which has recreational value, but not to urban, suburban, and subdivided lands (MCL 300.201; MSA 13.1485).

2. NEGLIGENCE — RECREATIONAL LAND USE ACT — LIABILITY OF OWNERS.

Owners of private land are not liable for injuries arising out of the outdoor recreational use of their land, including swimming when pursued as an outdoor sport, by persons who are on the land with or without permission of the owners unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owners; in determining liability, the character of the land and the purpose of the person going on the land is central (MCL 300.201; MSA 13.1485).

*David R. Skinner & Associates, P.C.* (by *David R. Skinner* and *John L. Wildeboer*), for plaintiff Wymer.

*Googasian, Hopkins, Rogers, Carlson & Hohauser* (by *George A. Googasian* and *Michael S. Hohauser*) for plaintiff Yahrling.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Frank M. Quinn*) for defendants Holmes.

*Mellon & McCarthy, P.C.* (by *Steve J. Weiss*), for defendants Belle Lake Association, Inc.

*Glime, Daoust, Wilds, Rusing & LeDuc* (by *James R. Daoust*); (*Gromek, Bendure & Thomas,* by *Daniel J. Wright* and *Neal C. Villhauer,* of counsel) for defendants Kontich, Bechard, Jagels, Rivers, Allen, Dimercurio, and David.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Deanna E. Hazen*), for defendants Sanders and Price.

Amici Curiae:

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Robert N. Hammond* and *Candace L. Sorensen*) for Michigan Defense Trial Counsel.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*) for Michigan Trial Lawyers Association.

ARCHER, J. We granted leave to determine the applicability of Michigan's recreational land use statute, MCL 300.201; MSA 13.1485, where the plaintiffs in these cases were social guests invited to the respective defendant-landowners' residential

homes to engage in recreation other than the activities which resulted in their injuries. In both cases, the plaintiffs were either injured or died while swimming at the property of the residential landowners.

The true issue is whether the property on which the injuries occurred was of the type intended to be covered by the recreational land use act. We hold that the recreational use act is not applicable to the two cases before the Court.

## I

### FACTS

We offer in part the pertinent facts as succinctly stated by the Court of Appeals in:

#### A. WYMER v HOLMES

Linda Wymer and her six-year-old daughter Jennifer were visiting the home of Linda's sister and brother-in-law, the defendants, during Memorial Day weekend, 1981. Pam Orlando, a friend of defendants, was also visiting with her three daughters, ages 3, 5 and 7. Jennifer Wymer, defendants' three-year-old daughter and seven-year-old son, and Orlando's three children played in and around defendants' home while the adults were inside. Linda Wymer had examined the pond which defendants had constructed in their backyard, but she was unable to see the bottom of it. She believed it was shallow. There were no dividers or markers indicating the depth of the pond. Linda Wymer and defendants allowed the children to go wading in the pond. The children were told to stay in the shallow section near the bank. Defendant Coleen Holmes told Jennifer Wymer three times to stay near the bank. In addition, the children were told to wade, not to swim. After catching some polliwogs with a bucket, the children left the water and started playing near the home.

Defendants had originally planned on grilling hot dogs in their backyard next to the pond. However, the children were hungry, so defendants decided to cook the hot dogs inside the house and eat them outside at the picnic table next to the pond. The decedent asked for and received permission to go wading in the pond with the other children. Defendant Coleen Holmes was in the kitchen preparing the hot dogs. Defendant James Holmes sat at the kitchen table with his back to the windows overlooking the pond. Linda Wymer sat at the kitchen table, facing the windows overlooking the pond. Approximately five minutes later, Linda Wymer and defendants were taking the hot dogs outside to the picnic table, when defendants' seven-year-old son asked where Jennifer was. Defendants and Linda Wymer searched the house and then looked outside. James Holmes dove into the pond while Linda Wymer and the codefendant went up the driveway to search for the child. James Holmes found the child in the shallow part of the pond, where the water was only approximately four to five feet deep. He administered artificial respiration while Linda Wymer rubbed the child's extremities. However, the child never regained consciousness. She died the following day. [144 Mich App 192, 194-195; 375 NW2d 384 (1985).]

Plaintiff Wymer later sued in the Tuscola Circuit Court. In a three-count complaint, the plaintiff made allegations of negligence, attractive nuisance, and failure to warn of the pond's claimed dangers. The complaint contained no allegations of gross negligence or wanton misconduct on the part of the defendants.

Prior to trial, the defendants filed a motion for summary judgment on the ground that plaintiff's claim was barred by the restrictions imposed by the recreational use act inasmuch as no considera-

tion had been paid for the decedent's outdoor recreational use of the land. The trial judge denied defendants' motion, ruling that because plaintiff was a social guest, and therefore a licensee, the question of defendants' liability as it relates to the duty to warn was appropriate for the jury.[1] Plaintiff's major thrust at trial was defendants' failure to warn of a drop in the pond. The jury instructions related to negligence, conduct required for the safety of a child, a landowner's duty to licensees, and damages. No mention was made of the recreational land use act.

[1] Under common law, premises liability hinged upon the status of the user of the property, e.g., invitee, licensee, and trespasser. Traditionally, a "trespasser" is a person who enters upon another's land, without the landowner's consent. The landowner owes no duty to the trespasser except to refrain from injuring him by "willful and wanton" misconduct. Prosser & Keeton, Torts (5th ed), § 58; Restatement Torts, 2d, §§ 329, 333. A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent, without more. Although a social guest is normally invited, he is not an "invitee" within the legal meaning of that term. Court decisions thus far have been all but unanimous to the effect that the social guest, however cordially invited and urged to come, is no more than a licensee. *Preston v Sleziak,* 383 Mich 442; 175 NW2d 759 (1970). A landowner only owes a licensee a duty to *warn* the licensee of any hidden dangers he knows or has reason to know of, if the licensee does not know or has no reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. Prosser & Keeton, Torts (5th ed), § 60; Restatement Torts, 2d, §§ 330, 342. An "invitee" is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe for their reception. The landowner has a duty of care, not only to warn the "invitee" of any known dangers, but to also make the premises safe, which requires the landowner to actually inspect the premises, and depending upon the circumstances, to make any necessary repairs or to warn of any discovered hazards. Prosser & Keeton, Torts (5th ed), § 61; Restatement Torts, 2d, §§ 332, 341A, 343, 343A.

Thus, under the recreational land use act, when persons enter land "with or without permission" for an outdoor recreational use, landowners owe no duty of care to keep the land safe for any recreational purpose or to give any warning of a dangerous condition unless they are compensated for the use of their property or unless injury results from malicious or wilful acts of the owner.

The jury returned a verdict of no cause of action. Plaintiff appealed in the Court of Appeals on issues unrelated to the issue presently before this Court. Defendants cross-appealed as to the recreational land use act issue. In a per curiam opinion, the Court of Appeals reversed[2] and remanded the case for a new trial on the basis of its resolution of the unrelated issues. The Court rejected defendants' cross-appeal, and held that the recreational land use act was inapplicable to social invitees because such application would not serve the legislative intent to promote tourism or open up private lands to public use. 144 Mich App 199.

### B. YAHRLING v BELLE LAKE ASS'N, INC

As undisputed by the parties, on August 24, 1980, plaintiff Yahrling had been invited to a birthday party at the home of Mr. and Mrs. Grannis, lot 50 of the Belle Lake Estates subdivision. Yahrling was later invited to the Brontkowski home, lot 47 of the subdivision. The Brontkowski property is continuous with Private Park "A" of the Belle Lake Estates subdivision. The lake is a man-made lake and part of Private Park A. Upon arriving at the lake, one of the swimmers who was familiar with the lake ran down a hill at the edge of the lake, made a shallow dive, and called to Yahrling to join him. Having decided to swim, Yahrling ran downhill to the water's edge, where he saw several telephone poles which had been laid lengthwise to prevent erosion. Yahrling found himself unable to stop due to momentum and was forced to step on the logs which were not level with the surface before entering the water. There-

_____

[2] The Court of Appeals reversed on the basis of improper argument by defense counsel and an improper instruction by the trial court.

after, Yahrling's momentum caused his legs to flip over his head, and he landed on the back of his neck in fourteen inches of water, sustaining a cervical fracture which has left him completely paralyzed from the shoulders down.

The lake wherein plaintiff was injured was owned by the homeowners of the entire subdivision. The surrounding individual lot owners have largely developed the perimeter land surrounding the lake. Due to erosion problems, the perimeter of Private Park A was graded and logs placed at the water's edge by residents. It is believed that all residents in the subdivision contributed to the improvements of the lake.

Private Park A is not open to use by anyone other than members or guests. The rear and one side of the park are protected by a fence with a locked gate. The other sides are bordered by neighboring sideyards and fences. The only access is down a dead end street where signs are posted stating it is a "private park" and that unauthorized use will be prosecuted. Homeowners pay an annual maintenance fee for the use and maintenance of the land for themselves and their guests. In addition, there is an increased cost of the land due to its proximity to the lake.

Plaintiff later brought suit against more than two hundred defendants, including the neighborhood associations and individual lot owners of the Belle Lake Estates subdivision in Macomb County. The plaintiff appealed in the Court of Appeals from the trial court grants of summary judgment for the landowners. Summary judgment was based, in part, upon application of the recreational land use act. The Court of Appeals affirmed.

We granted leave to determine the applicability of the recreational land use act in both cases.

II

### LEGISLATIVE HISTORY

The Michigan recreational use statute was originally introduced as House Bill 241 and applied only to persons coming upon the lands of another for the purpose of "hunting."[3] The Committee of the Whole amended the bill by adding "fishing,"[4] and the House Committee on Conservation further amended the bill by adding "trapping."[5] When finally enacted into law as 1953 PA 201, the original bill read:

No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other a valuable consideration *for the purpose of fishing, hunting or trapping,* with or without permission, against the owner, tenant or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant or lessee. [Emphasis added.]

The 1953 enactment was amended by 1964 PA 199, which added the further purposes of "camping, hiking, sightseeing or other similar outdoor recreational use." The House of Representatives Committee of the Whole amended the original House Bill 401 by adding "outdoor,"[6] and the House Committee on Judiciary added "similar."[7] The final bill as enacted in 1964 read:

No cause of action shall arise for injuries to any person who is on the lands of another without

[3] 1953 Journal of the House 374, 483.

[4] *Id.,* n 3 *supra,* 496, 516.

[5] *Id.,* n 3 *supra,* 609, 646-647, 665.

[6] 1964 Journal of the House 822.

[7] 1964 Journal of the Senate 919-920.

paying to such other person a valuable considera-
tion *for the purpose of fishing, hunting, trapping,
camping, hiking, sightseeing or other similar out-
door recreational use,* with or without permission,
against the owner, tenant or lessee of said prem-
ises unless the injuries were caused by the gross
negligence or wilful and wanton misconduct of the
owner, tenant or lessee. [Emphasis added.]

The act was amended by 1974 PA 177, to add
the further purposes of "motorcycling, snowmobil-
ing, or any other outdoor recreational use." In
1974, the Committee on Conservation, Environ-
ment and Tourism, through Senate Bill 1196, pro-
posed changing the operative language of the stat-
ute, to read "motorcycling, snowmobiling, or other
similar outdoor recreational use."[8] The Committee
of the Whole then amended the bill by changing
the language to "motorcycling, snowmobiling, or
any other outdoor recreational use.[9]

The recreational land use statute, as it appeared
at the time the instant case arose, provided:

No cause of action shall arise for injuries to any
person who is on the lands of another without
paying to such other person a valuable considera-
tion *for the purpose of fishing, hunting, trapping,
camping, hiking, sightseeing, motorcycling, snow-
mobiling, or any other outdoor recreational use,*
with or without permission, against the owner,
tenant, or lessee of said premises unless the inju-
ries were caused by the gross negligence or wilful
and wanton misconduct of the owner, tenant, or
lessee. [Emphasis added.][10]

---

[8] 1974 Journal of the Senate 879.

[9] *Id.,* n 8 *supra,* 940-941.

[10] The Legislature further amended the act in 1987. The pertinent
section now reads:

*Except as provided in subsection (3),* no cause of action shall
arise for injuries to any person who is on the lands of another

III

ANALYSIS OF LEGISLATIVE HISTORY

The defendants in these two cases urge us to apply the "plain meaning rule" in deciding the applicability of the recreational use act to the facts in their respective cases. They assert that the language used by the Legislature is purposely clear and capable of application without interpretation.[11] Thus, in their view, no judicial interpretation or construction is permitted if the statute is clear and unambiguous. *Owendale-Gagetown School Dist v Bd of Ed,* 413 Mich 1; 317 NW2d 529 (1982).

While defendants correctly note that judicial interpretation is unnecessary if the statute is clear, in construing a statute, this Court must read the language of the statute in light of the general purpose to be accomplished. Amendatory acts are not to be considered in isolation, but are to be construed in the context of the act which it is designed to amend. *Fowler v Chiropody Bd,* 374 Mich 254, 257; 132 NW2d 82 (1965); *Conrad v Nall,* 24 Mich 275, 277 (1872); *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 478; 208 NW2d 469 (1973). See *People v Gilbert,* 414 Mich 191, 205; 324 NW2d 834 (1982). Our first

without paying to *the owner, tenant, or lessee of the lands* a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of *the land* unless the injuries were caused by the gross negligence or *willful* and wanton misconduct of the owner, tenant, or lessee. [1987 PA 110, MCL 300.201(1); MSA 13.1485(1). Emphasis added.]

[11] See *Karl v Bryant Air Conditioning,* 416 Mich 558, 567; 331 NW2d 456 (1982); *Winiecki v Wolf,* 147 Mich App 742; 383 NW2d 119 (1985).

task, therefore, is to ascertain the question of legislative purpose.

The act, as amended by 1964 PA 199, § 1 and 1974 PA 177, states the purpose as:

> AN ACT restricting suits by persons coming upon the property of another for certain purposes; and to declare the limited liability of owners of property within this state.

More than forty states have adopted recreational land use laws[12] which limit the liability of private landowners whose lands are used for outdoor recreational activities, such as those enumerated in the Michigan recreational land use statute. Although most states were encouraged to enact such laws by virtue of a model act promulgated in 1965 by the Council of State Governments,[13] Michigan's Legislature had the foresight to protect its landowners more than a decade earlier. It is reasonable to assume that the Michigan statute has the similar general purpose of similar acts in other jurisdictions: to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.[14] This purpose was discussed in *Thomas v Consumers Power,* 58 Mich App 486, 495-496; 228 NW2d 786 (1975), when the Court stated that it perceived

---

[12] See Barrett, *Good sports and bad lands: The application of Washington's recreational use statute limiting landowner liability,* 53 Wash L R 1, 2, n 10 (1977).

[13] Council of State Governments, Suggested State Legislation, vol XXIV, pp 150-152 (1965).

[14] See Council of State Governments, n 13 *supra,* "Public recreation on private lands: Limitation on liability," p 150, n 11; Barrett, n 11 *supra,* p 3; Thompson & Dettmer, *Trespassing on the recreational user statute,* 61 Mich B J 726 (1982); Anno: *Effect of statute limiting landowner's liability for personal injury to recreational user,* 47 ALR4th 262, 270-271.

a legitimate state objective in promoting tourism and in *opening up and making available vast areas of vacant but private lands to the use of the general public.*[15] [Emphasis added.]

Accord *Thone v Nicholson,* 84 Mich App 538, 543; 269 NW2d 665 (1978); *Burnett v City of Adrian,* 414 Mich 448, 475; 326 NW2d 810 (1982).

By the terms of the statute as enacted in 1953, it applied only to those who were hunting, fishing, or trapping. Reference to the history of the act demonstrates that the Legislature only intended to limit a landowner's liability where others fished, hunted, or trapped upon his land. Later, as increased leisure time allowed our society to expand its inclination for outdoor recreation, the Legislature expanded the scope of the statute in parallel fashion.

The activities added in 1964 were logical extensions of the original act. Yet, the Legislature, by adding the term "outdoor" gave a more restrictive meaning to the statute than the original "recreational use." In the context of the more specific words, the term "outdoor" connotes more than a mere inside-outside distinction.[16]

The last amendment in 1974, in adding two more enumerated activities—motorcycling and snowmobiling—shows no intent to change the common law. The additional change in the 1974

[15] This Court has not directly addressed the question whether public land is covered by the RUA. In *Burnett v City of Adrian,* 414 Mich 448; 326 NW2d 810 (1982), this Court held that plaintiff's claim stated a cause of action for wilful and wanton misconduct under the RUA without first considering the applicability of the statute to a reservoir owned by a city, an issue never briefed nor raised in that case.

It is not necessary for the Court to determine whether public land is covered by the RUA at this time. However, arguments in favor of limiting the application of the RUA to private land have been made. Thompson & Dettmer, *Trespassing on the recreational user statute,* 61 Mich B J 726 (1982).

[16] Barrett, n 12 *supra,* pp 20-21.

amendment to "or any other outdoor recreational use" from the 1964 "or other similar outdoor recreational use" appears to have allowed expansion of the list of activities to include new and novel outdoor recreational activities without creating a laundry list. We do not see this legislative response as an indication that the Legislature intended a major restructuring of Michigan's common-law premises liability.

The legislative history of the recreational land use statute and its two predecessor statutes, as well as other interpretative aids, also indicate that the Legislature intended the act to apply specifically to certain enumerated outdoor activities (fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling) which, ordinarily, can be accommodated only on tracts of land which are difficult to defend from trespassers and to make safe for invited persons engaged in recreational activities. The commonality among all these enumerated uses is that they generally require large tracts of open, vacant land in a relatively natural state. This fact and the legislative history of the RUA make clear to us that the statute was intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the RUA. The intention of the Legislature to limit owner liability derives from the impracticability of keeping certain tracts of lands safe for public use. The same need to limit owner liability does not arise in the case of recreational facilities which, in contrast, are relatively easy to supervise and monitor for safety hazards.

As our analysis reveals, Michigan's recreational use statute redirected the focus of landowner liability from the status of the user of the property,

making the purpose of going on the land and the character of land central to the determination of the owner's liability.[17] Accordingly, we have determined the applicability of the statute in these cases with that same focus in mind, as opposed to the status-of-the-user focus applied by the lower courts when emphasizing the status of the plaintiffs as social guests.

## IV

Plaintiffs in *Yahrling* also raised the additional issue whether "valuable consideration," as required by the statute, was paid by plaintiff Yahrling. In light of our holding above, it is not necessary for us to decide this issue.

## V

### CONCLUSION

The language of the recreational use act, read in the light of its legislative history, is intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the recreational use act. Therefore, the recreational use act is not applicable to the two cases before the Court.

We affirm the decision of the Court of Appeals in *Wymer* and reverse the Court of Appeals decision in *Yahrling.*

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with ARCHER, J.

GRIFFIN, J., took no part in the decision of this case.

---

[17] See, e.g., *Thomas v Consumers Power Co, supra,* 58 Mich App 494-496 (snowmobiling on fairgrounds); *Taylor v Mathews,* 40 Mich App 74, 77; 198 NW2d 843 (1972) (diving at a gravel pit); *Heider v Michigan Sugar Co,* 375 Mich 490; 134 NW2d 637 (1965) (trapping at a twenty-seven-acre pond).