**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Maura D. Corrigan

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 20, 2004**

JULIE NEAL,

    Plaintiff-Appellee,

v                                                No. 122498

TERRY WILKES,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to consider whether defendant is exempt from liability pursuant to the recreational land use act (RUA), MCL 324.73301(1), for injuries plaintiff sustained while riding an all-terrain vehicle (ATV) on defendant's property. The trial court granted defendant's motion for summary disposition, concluding that the RUA bars plaintiff's cause of action against defendant. The Court of Appeals reversed, holding that defendant is not exempt from liability for injuries that occurred to plaintiff while riding an ATV on the mowed

portion of defendant's backyard because the RUA only pertains to injuries that occur on "large tracts of undeveloped land." Because there is nothing in the RUA that indicates that it pertains only to "large tracts of undeveloped land," we reverse the judgment of the Court of Appeals and reinstate the trial court's order of summary disposition in favor of defendant.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff injured her back while riding as a passenger on defendant's ATV, which was being driven by defendant's brother on defendant's property in the village of Dimondale.[1] When defendant's brother drove over an uneven area of defendant's lawn, plaintiff was bounced on the ATV, causing her to suffer injuries to her lower back. Defendant's property is an eleven-acre lot that is zoned residential. Although portions of the lot are wooded, plaintiff was injured while riding on the mowed portion of defendant's backyard. The trial court granted defendant's motion for summary disposition on the basis that the RUA bars plaintiff's cause of action against defendant.

_____

[1] An "ATV" is defined as a "3- or 4-wheeled vehicle designed for off-road use that has low-pressure tires, has a seat designed to be straddled by the rider, and is powered by a 50cc to 500cc gasoline engine or an engine of comparable size using other fuels." MCL 324.81101(a).

2

However, on the basis of this Court's decision in *Wymer v Holmes*, 429 Mich 66, 79; 412 NW2d 213 (1987), that the RUA only applies to "large tracts of undeveloped land," the Court of Appeals reversed and remanded the case for continued proceedings.[2] After this Court directed the parties to present oral argument on whether to grant the application or take other action permitted by MCR 7.302(G)(1),[3] and having heard such argument, we granted defendant's application for leave to appeal.[4]

## II. STANDARD OF REVIEW

At issue in this case is the proper interpretation of MCL 324.73301(1). The proper interpretation of a statutory provision is a question of law that this Court reviews de novo. *Morales v Auto-Owners Ins Co*, 469 Mich 487, 490; 672 NW2d 849 (2003). Likewise, a trial court's ruling on a summary disposition motion is a question of law that this Court reviews de novo. *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 426; 670 NW2d 651 (2003).

## III. ANALYSIS

The RUA, MCL 324.73301(1), provides:

---

[2] Unpublished opinion per curiam, issued September 17, 2002 (Docket No. 230494).

[3] 469 Mich 870 (2003).

[4] 469 Mich 936 (2003).

Except as otherwise provided in this section, a cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee.

In *Wymer*, the plaintiff's decedent suffered injuries while swimming on the defendants' property. This Court held that the defendants could be held liable for the plaintiff's injuries because "the [RUA] was intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the RUA." *Wymer, supra* at 79.

Defendant contends that our decision in *Wymer* should be overruled because it is inconsistent with the plain language of the RUA. We agree. "[O]ur primary task in construing a statute, is to discern and give effect to the intent of the Legislature." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "The words of a statute provide 'the most reliable evidence of its intent . . . .'" *Id.*, quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). Although

4

the *Wymer* Court noted that its task was to ascertain the legislative intent, it failed to recognize that the language of the statute is the best source for determining legislative intent. Instead, *Wymer* found it "reasonable to assume that the Michigan statute has the similar general purpose of similar acts in other jurisdictions . . . ."[5] *Wymer, supra* at 77. That purpose being to "open[] up and mak[e] available vast areas of vacant but private lands to the use of the general public" in order to "promot[e] tourism." *Id.* at 78, quoting *Thomas v Consumers Power Co,* 58 Mich App 486, 495-496; 228 NW2d 786 (1975). If that were the Legislature's purpose, it could have used the words "vacant or undeveloped land of another," rather than the words "the lands of another."[6]

---

[5] It is impossible for us to determine whether these other acts are indeed "similar" to Michigan's act in any particular respect because *Wymer* failed to cite any of these "similar acts."

[6] Immediately before *Wymer, supra,* stated that the purpose of the RUA is to make available to the public "vast areas of vacant but private lands," *id*. at 78, it asserted that the purpose of the RUA is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Id.* at 77. Although we agree that the purpose of the RUA is to encourage owners of private land to make their land available to the public, we can find no basis to conclude

(continued…)

Before *Wymer,* in *Winiecki v Wolf,* 147 Mich App 742, 745; 383 NW2d 119 (1985), in which the plaintiff was injured while playing with "land skis" in defendants' backyard, the Court of Appeals concluded that the RUA precluded plaintiff's action against the defendants, stating:

> [The RUA], as the trial court has already observed, is clear and unambiguous. Plaintiff was a person on the lands of another, without paying a consideration, for the purpose of an outdoor recreational use. The statute offers nothing on its face excluding from its application the backyard of residential property. If the Legislature did not intend the statute to apply to parcels of land this size, it was within its power to insert words limiting the statute's application, e.g., to lands in their natural state. As we, however, are constrained to apply the statute as written, we cannot say that the trial court erred in relieving defendants of liability based on the recreational use statute.

This understanding of the RUA is truer to the language of the RUA than is the *Wymer* Court's interpretation of the RUA. There is absolutely no indication in the language of the RUA that the Legislature intended its application to be limited to vacant or undeveloped lands. As the Court of Appeals in the instant case stated, "[a]lthough nothing in the statutory language indicates that the statute is not

---

(…continued)
that the purpose of the RUA is to encourage *only* owners of vast areas of vacant private land in this regard.

applicable to the backyards of residential property such as defendant's, the statute has been construed to apply 'to large tracts of undeveloped land suitable for outdoor recreational uses,' not to '[u]rban, suburban, and subdivided lands . . . .'" Slip op at 2 (citations omitted).[7] Because this construction is, as the Court of Appeals itself recognized, not supported by the statutory language, we are compelled to abandon this construction and overrule *Wymer*.[8]

The RUA makes no distinction between large tracts of land and small tracts of land, undeveloped land and developed land, vacant land and occupied land, land suitable for outdoor recreational uses and land not suitable for outdoor recreational uses, urban or suburban land and rural land, or subdivided land and unsubdivided

---

[7] This language suggests that the Court of Appeals might well have reached a different conclusion in this case had it not been bound by *Wymer*.

[8] Although we recognize the importance of stare decisis, we conclude that it is appropriate to overrule *Wymer* because it is clearly inconsistent with the language of the RUA and, thus, was wrongly decided. Further, there are no relevant "reliance" interests involved and overruling *Wymer* would, therefore, not produce any "practical real-world dislocations." See *Robinson v Detroit*, 462 Mich 439, 465-466; 613 NW2d 307 (2000).

land.[9]  To introduce such distinctions into the act is to engage in what is essentially legislative decision-making. The RUA simply states that an owner of land is not liable to a person who injures himself on the owner's land if that person has not paid for the use of the land and that person was using the land for a specified purpose,[10] unless the injuries were caused by the owner's gross negligence or willful and wanton misconduct.  The statute contains no limitation on the type of land involved, but rather applies to specified activities that occur "on the land of another . . . ."  MCL 324.73301(1).  That is, the act limits its application to specified activities, but it does not limit its application to any particular type of land.  Therefore, an owner is not liable to a nonpaying outdoor recreational user of his land, unless the user's injuries are caused by

---

[9] We disagree with the dissent's assertion that an "*urban residential* backyard" is not a natural resource. *Post* at 4 (emphasis in original).  Rather, in our judgment, land is a natural resource whether it is urban or rural, residential or non-residential, someone's backyard or a state park.  See *Random House Webster's College Dictionary* (1991)(defining "natural resources" as "the natural wealth of a country, consisting of land . . . .").

[10] We use the terms "specified purpose" and "specified activity" throughout this opinion as a summary phrase for describing "fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use . . . ."  See MCL 324.73301(1).

the owner's gross negligence or willful and wanton misconduct.[11]

---

[11] Plaintiff and the dissent argue that the fact that the Legislature amended the RUA after *Wymer* was decided, but did not amend the language at issue here, means that the Legislature must have agreed with the *Wymer* Court's interpretation of the RUA. However, as we recently explained in *People v Hawkins*, 468 Mich 488, 507-510; 668 NW2d 602 (2003), neither "legislative acquiescence" nor the "reenactment doctrine" may "be utilized to subordinate the plain language of a statute." "Legislative acquiescence" has been repeatedly rejected by this Court because "Michigan courts [must] determine the Legislature's intent from its *words*, not from its silence." *Donajkowski v Alpena Power Co,* 460 Mich 243, 261; 596 NW2d 574 (1999). Although, where statutory language is ambiguous, the reenactment doctrine may be a more useful tool of construction, "[i]n the absence of a clear indication that the Legislature intended to either adopt or repudiate this Court's prior construction, there is no reason to subordinate our primary principle of construction—to ascertain the Legislature's intent by first examining the statute's language—to the reenactment rule." *Id.* at 508-509.

The dissent concludes that the fact that the Legislature amended § 73301(2) of the RUA to apply to "land of any size, including, but not limited to, urban, suburban, subdivided, and rural land," but did not similarly amend § 73301(1) is a "clear indication" of its intentions. *Post* at 6. The dissent is correct that the amendment of § 73301(2) represents a clear indication of intentions. It is a clear indication that the Legislature intended § 73301(2) to apply to "land of any size including, but not limited to, urban, suburban, subdivided, and rural land." However, contrary to the dissent's assertion, it is *not* a clear indication that the Legislature intended § 73301(1) to only apply to "large, undeveloped tracts of land." *Post* at 5, 6 n 2. Section 73301(1) of the RUA refers to "the land of another." "Land" is defined as "any part of the earth's surface . . . not covered by a body of water." *Random House Webster's*

(continued…)

9

The dissent mischaracterizes our opinion by stating that our "interpretation eliminates the liability of a landowner, tenant, or lessee when a person who does not pay consideration and who participates in *any* outdoor recreational activity is injured . . . ." *Post* at 3 (emphasis in original). Contrary to the dissent's suggestion, the RUA does not apply to *any* outdoor recreational activity. Rather, it only applies to "fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use . . . ." MCL 324.73301(1). Under the statutory construction doctrine known as ejusdem generis, where a general term follows a series of specific terms, the general term is interpreted "to include only things of the same kind, class, character, or nature as those specifically enumerated." *Huggett v Dep't of Natural Resources,* 464 Mich 711, 718-719; 629 NW2d 915 (2001). Therefore, the language "other outdoor recreational use" must be interpreted to include only those outdoor

_____

(…continued)
*College Dictionary* (1991). Section 73301(1) unambiguously applies to "land," and "a court may read nothing into an unambiguous statute." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2000). Therefore, we reject the dissent's view that the word "land" in § 73301(1) means only "large, undeveloped tracts of land." *Post* at 5.

10

recreational uses "of the same kind, class, character, or nature," *id.*, as "fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, [and] snowmobiling . . . ." MCL 324.73301(1).[12] While the dissent apparently believes that jump-roping and playing hopscotch, pin-the-tail-on-the-donkey, shuffleboard, and horseshoes are of the "same kind, class, character, or nature" as "fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, and snowmobiling . . . ." *post* at 3, 6 n 2, 9, we see no need to address these or any other activities that are not at issue in this case.

In this case, plaintiff was injured "on the land of another without paying to the owner . . . a valuable consideration for the purpose of . . . an[] . . . outdoor

---

[12] The dissent uses the doctrine of ejusdem generis to conclude that the RUA only applies to "large undeveloped tracts of land." *Post* at 5. As noted above, the doctrine of ejusdem generis, applies where a general term follows a listing of several specific terms. The RUA uses the general term "land." The dissent applies the doctrine of ejusdem generis to define the term "land." However, the term "land" does not follow a listing of specific terms. Therefore, while it is appropriate to apply the doctrine of ejusdem generis to "other recreational uses" because it follows a listing of several specific types of recreational uses, it is not appropriate to apply the doctrine of ejusdem generis to "land" because "land" does not follow a listing of several specific types of land.

recreational use . . . ."[13]  *Id.*  Plaintiff does not contest the fact that riding an ATV on another's land is an outdoor recreational use of another's land within the meaning of the RUA.  There is no evidence that plaintiff's "injuries were caused by the gross negligence or willful and wanton misconduct of the owner . . . ."[14]  *Id.*  Thus, pursuant to

---

[13] Plaintiff argues in the alternative that the RUA does not apply because plaintiff was not on defendant's property for the "purpose" of an outdoor recreational use, but, rather, was on defendant's property for the "purpose" of a social visit.  In other words, plaintiff argues that the RUA only applies to individuals who enter upon land with the specific intent of using the land for a specified purpose; it does not apply to individuals who enter the land for some other purpose, such as a social visit, and who, incidentally to this purpose, subsequently use the land for a specified purpose.  We disagree.  Plaintiff, like the Court in *Wymer*, is adding words to the act that simply are not there.  The RUA states that an owner of land is not liable for injuries to a person who is "on the [owner's] land" "for the purpose of" a specified activity.  Nothing in the act's language limits its application to individuals who *enter* the land for the purpose of a specified activity.  Rather, the act clearly applies to individuals who, at the time of the injury, are on the land of another for a specified purpose.  One's initial purpose for entering the land is not relevant.

[14] Plaintiff contends that defendant should be held liable for plaintiff's injuries even if the RUA does apply because plaintiff's injuries were caused by defendant's gross negligence or willful and wanton misconduct.  Although plaintiff alleged in her complaint that her injuries were caused by defendant's negligence, nowhere in her complaint does she allege that her injuries were caused by defendant's gross negligence or willful and wanton misconduct.  Moreover, even if plaintiff's allegations are accepted as true, i.e., that defendant knew of the dangers
(continued…)

12

the RUA, defendant owner cannot be held liable for these injuries.

## IV. Conclusion

The RUA exempts an owner of land from liability for injuries suffered by a person while that person is using the owner's land for specified purposes if that person has not paid the owner a valuable consideration for such use, unless the injuries were caused by the owner's gross negligence or willful and wanton misconduct. This exemption applies to the owners of large tracts of land and small tracts of land, undeveloped land and developed land, vacant land and occupied land, land suitable for outdoor recreational uses and land not suitable for outdoor recreational uses, urban or suburban land and rural land, and subdivided land and unsubdivided land. Plaintiff injured herself while using defendant's land for a specified purpose (riding an ATV) without having paid defendant a valuable consideration for this use, and her injuries were not caused by defendant's gross negligence or

---

(…continued)

of operating an ATV with a passenger on it, and of driving the ATV over the uneven area of his backyard, and yet failed to warn plaintiff of these dangers, these allegations still do not support plaintiff's contention that her injuries were caused by defendant's gross negligence or willful and wanton misconduct.

willful and wanton misconduct.  Thus, pursuant to the RUA, defendant cannot be held liable for plaintiff's injuries. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court's order of summary disposition in favor of defendant.

Stephen J. Markman
Maura D. Corrigan
Elizabeth A. Weaver
Clifford W. Taylor
Robert P. Young, Jr.

STATE OF MICHIGAN

SUPREME COURT

JULIE NEAL,

    Plaintiff-Appellee,

v                                              No. 122498

TERRY WILKES,

    Defendant-Appellant.

_____

CAVANAGH, J. *(dissenting).*

Today, the majority holds that the Recreational Land Use Act (RUA), MCL 324.73301(1), applies to outdoor recreational activities on all types of land. Therefore, the majority believes that it must overrule this Court's prior unanimous opinion in *Wymer v Holmes*, 429 Mich 66; 412 NW2d 213 (1987). Because I believe the majority ignores the words of the statute, the intent of the Legislature, and the amendment of the statute by the Legislature, I must respectfully dissent.

I.  THE RECREATIONAL LAND USE ACT AND *WYMER v HOLMES*

MCL 324.73301 states, in pertinent part, the following:

(1) Except as otherwise provided in this section, a cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee.

(2) A cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of entering or exiting from or using a Michigan trailway as designated under part 721 or other public trail, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee. For purposes of this subsection, a Michigan trailway or public trail may be located on land of any size including, but not limited to, urban, suburban, subdivided, and rural land.

In *Wymer*, *supra* at 79, this Court held that the RUA "was intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the RUA." *Id*.[1] This Court read the plain language of the statute in light of the statute's general purpose. *Id*. at

---

[1] *Wymer* interpreted a former version of the RUA, but the difference is not relevant to the issue or outcome of this case.

2

76.     We noted that the RUA listed activities that ordinarily can be accommodated on land that is difficult to defend from trespassers and difficult to make safe for people invited to participate in recreational activities. "The commonality among all these enumerated uses is that they generally require large tracts of open, vacant land in a relatively natural state." *Id*. at 79.

The current majority now states that there "is absolutely no indication in the language of the RUA that the Legislature intended its application to be limited to vacant or undeveloped lands." *Ante* at 6.  The majority's interpretation eliminates the liability of a landowner, tenant, or lessee when a person who does not pay consideration and who participates in *any* outdoor recreational activity is injured, unless the landowner, tenant, or lessee was grossly negligent or engaged in willful and wanton misconduct.  A person participating in an outdoor recreational activity on the land of another is now essentially treated as a trespasser.  Our citizens will be surprised to learn that when their children go to their friends' homes and jump rope or play hopscotch, the landowner is now only liable for acts of gross negligence or willful and wanton misconduct.

3

## II. THE LEGISLATURE'S INTENT

While the majority contends that its decision is dictated by the words used by the Legislature, the majority conveniently discounts and ignores facts that are contrary to its opinion. Notably, the RUA is found in the *Natural Resources and Environmental Protection Act*, MCL 324.101 *et seq.*, the purpose of which is "to protect the environment and natural resources of the state . . . ." 1994 PA 451. Other sections of the act deal with forest and mineral resource development, MCL 324.701 *et seq.*; use of water in mining low-grade iron ore, MCL 324.3501 *et seq.*; sand dune protection and management, MCL 324.35301 *et seq.*; and state forest recreation, MCL 324.83101 *et seq.*, to name just a few. It is highly unlikely that an *urban residential* backyard was among the state's natural resources considered in the RUA.

Further, the doctrine of ejusdem generis also supports the conclusion reached in *Wymer* and confirms the folly of the majority's interpretation. This Court explained the doctrine in *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000):

> "[Ejusdem generis] is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning

4

of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated." [Quoting *People v Brown*, 406 Mich 215, 221; 277 NW2d 155 (1979).]

The RUA refers to "fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use . . . ." MCL 324.73301(1). The activities described in the statute are all activities that take place on large, undeveloped tracts of land. With the exception of house hunting, bargain hunting, and the occasional actions of Elmer Fudd in a Bugs Bunny cartoon, hunting is an activity that is actually *prohibited* in urban and suburban neighborhoods. When the Legislature wrote about snowmobiling, it is doubtful that it was referring to riding a snowmobile back and forth in a residential backyard like a duck at a carnival shooting game. The fact that the Legislature listed activities that can only be accomplished on large, undeveloped tracts of land indicates that it did not intend for the statute to cover residential *lawns*.[2]

---

[2] The majority improperly characterizes my use of the doctrine of ejusdem generis. Because the majority ignores the Legislature's intent, I use the doctrine to examine the types of *activities* the Legislature meant to include when

5

Finally, in support of its conclusion that § 73301(1) applies to all land, the majority states that the Legislature "could have used the words 'vacant or undeveloped land of another'" in § 73301(1) if the RUA was only meant to apply to vast areas of land. *Ante* at 5. This, however, ignores the fact that the Legislature has shown in § 73301(2) that it knows how to use clear wording when it wants the statute to apply to *all* land. In § 73301(2) of the statute, the Legislature used the phrasing "land of any size including, but not limited to, urban, suburban, subdivided, and rural land." The majority even admits that this is a "clear indication" of the Legislature's intent for § 73301(2) to apply to land of any size. *Ante* at 9 n 11. If the Legislature meant for *both* subsections of the statute to apply to *all* land of any size, then it would not have chosen to use different phrasing to mean the exact same thing.

---

(…continued)
it used the phrase "any other outdoor recreational use." A proper use of ejusdem generis leads to the conclusion that the activities covered by the statute are only those engaged in on large, open tracts of land, consistent with *Wymer*'s interpretation of the statute. While I do not believe that the Legislature meant to include activities such as a rousing game of shuffleboard or horseshoes, the majority's strained reading of the statute now covers activities such as those.

6

## III.  THE REENACTMENT RULE

Under the reenactment rule, "[i]f a legislature reenacts a statute without modifying a high court's practical construction of that statute, that construction is implicitly adopted." *People v Hawkins*, 468 Mich 488, 519; 668 NW2d 602 (2003) (CAVANAGH, J., dissenting), citing 28 Singer, Statutes and Statutory Construction (2000 rev), Contemporaneous Construction, § 49.09, pp 103-112.  The Legislature "is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it [reenacts] a statute without change . . . ."  *Lorillard, a Div of Loew's Theatres, Inc v Pons*, 434 US 575, 580; 98 S Ct 866; 55 L Ed 2d 40 (1978). "The reenactment rule differs from the legislative-acquiescence doctrine in that the former canon provides 'prima facie evidence of legislative intent' by the adoption, without modification, of a statutory provision that had already received judicial interpretation."  *Hawkins*, *supra* at 488, quoting Singer at 107.

The majority chooses to dismiss the Legislature's amendments of the RUA because they are not a "clear indication" of the Legislature's intent.  But the actions of the Legislature could not be much clearer.  After this

7

Court's decision in *Wymer*, the Legislature *twice* amended the RUA, yet the Legislature did not address the alleged "error" in *Wymer*. Notably, the Legislature amended § 73301(2) of the statute to indicate that it applied to "land of any size, including, but not limited to, urban, suburban, subdivided, and rural land." The Legislature did *not* incorporate this same language in § 73301(1). If this Court's decision in *Wymer* were incorrect, the Legislature could have resolved this "error" by adding the same language to subsection 1 as it did to subsection 2. In amending the statute, the Legislature stated that subsection 2 applied to "land of any size . . . ." Because the Legislature did not make a similar amendment of subsection 1, the Legislature's manifest intent that *Wymer* was correctly decided could not be clearer.

## IV. CONCLUSION

Plaintiff's injury occurred while at defendant's home, which is located in a residential subdivision. Plaintiff was injured while on defendant's *lawn*; a lawn that defendant had mowed that very day. While the majority asserts that the RUA bars plaintiff's claim, the practical import of the majority's tortuous reasoning is that *any* outdoor recreational activity that occurs on *any* parcel of land will fall within the purview of the statute. On the

8

basis of the words chosen by the Legislature, as well as its actions in amending the statute, I do not believe that our Legislature intended for the RUA to cover activities such as those that routinely take place at children's outdoor birthday parties.[3]  While the majority may believe that a statute found in the Natural Resources and Environmental Protection Act was meant to cover a spirited game of pin-the-tail-on-the-donkey, I have more faith in the wisdom of our Legislature and more respect for the actions it has taken.

Accordingly, I respectfully dissent and would affirm the decision of the Court of Appeals because plaintiff's claim is not barred by the Recreational Land Use Act.

Michael F. Cavanagh
Marilyn Kelly

---

[3]  Following today's decision, people invited to such a party, or to a neighborhood barbecue, should be forewarned to "be sure to bring a dish (consideration) to pass."