CAVANAGH, J.
(dissenting). Today, the majority holds that the Recreational Land Use Act (RUA), MCL 324.73301(1), applies to outdoor recreational activities on all types of land. Therefore, the majority believes that it must overrule this Court’s prior unanimous opinion in Wymer v Holmes, 429 Mich 66; 412 NW2d 213 (1987). Because I believe the majority ignores the words of the statute, the intent of the Legislature, and the amendment of the statute by the Legislature, I must respectfully dissent.
I. THE RECREATIONAL LAND USE ACT AND WYMER v HOLMES
MCL 324.73301 states, in pertinent part, the following:
(1) Except as otherwise provided in this section, a cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee.
*673 (2) A cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of entering or exiting from or using a Michigan trailway as designated under part 721 or other public trail, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee. For purposes of this subsection, a Michigan trailway or public trail may be located on land of any size including, but not limited to, urban, suburban, subdivided, and rural land.
In Wymer, supra at 79, this Court held that the RUA “was intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the RUA.” Id.[1] This Court read the plain language of the statute in light of the statute’s general purpose. Id. at 76. We noted that the RUA listed activities that ordinarily can be accommodated on land that is difficult to defend from trespassers and difficult to make safe for people invited to participate in recreational activities. “The commonality among all these enumerated uses is that they generally require large tracts of open, vacant land in a relatively natural state.” Id. at 79.
The current majority now states that there “is absolutely no indication in the language of the RUA that the Legislature intended its application to be limited to vacant or undeveloped lands.” Ante at 666. The majority’s interpretation eliminates the liability of a landowner, tenant, or lessee when a person who does not pay consideration and who participates in any outdoor recreational activity is injured, unless the landowner, *674 tenant, or lessee was grossly negligent or engaged in willful and wanton misconduct. A person participating in an outdoor recreational activity on the land of another is now essentially treated as a trespasser. Our citizens will be surprised to learn that when their children go to their friends’ homes and jump rope or play hopscotch, the landowner is now only liable for acts of gross negligence or willful and wanton misconduct.
II. THE LEGISLATURE’S INTENT
While the majority contends that its decision is dictated by the words used by the Legislature, the majority conveniently discounts and ignores facts that are contrary to its opinion. Notably, the RUA is found in the Natural Resources and Environmental Protection Act, MCL 324.101 et seq., the purpose of which is “to protect the environment and natural resources of the state ... .” 1994 PA 451. Other sections of the act deal with forest and mineral resource development, MCL 324.701 et seq.; use of water in mining low-grade iron ore, MCL 324.3501 et seq.; sand dune protection and management, MCL 324.35301 et seq.; and state forest recreation, MCL 324.83101 et seq., to name just a few. It is highly unlikely that an urban residential backyard was among the state’s natural resources considered in the RUA.
Further, the doctrine of ejusdem generis also supports the conclusion reached in Wymer and confirms the folly of the majority’s interpretation. This Court explained the doctrine in Sands Appliance Servs, Inc v Wilson, 463 Mich 231, 242; 615 NW2d 241 (2000):
“[Ejusdem generis] is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily *675 be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated.” [Quoting People v Brown, 406 Mich 215, 221; 277 NW2d 155 (1979).]
The RUA refers to “fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use. .. .” MCL 324.73301(1). The activities described in the statute are all activities that take place on large, undeveloped tracts of land. With the exception of house hunting, bargain hunting, and the occasional actions of Elmer Fudd in a Bugs Bunny cartoon, hunting is an activity that is actually prohibited in urban and suburban neighborhoods. When the Legislature wrote about snowmobiling, it is doubtful that it was referring to riding a snowmobile back and forth in a residential backyard like a duck at a carnival shooting game. The fact that the Legislature listed activities that can only be accomplished on large, undeveloped tracts of land indicates that it did not intend for the statute to cover residential lawns [2]
Finally, in support of its conclusion that § 73301(1) applies to all land, the majority states that the Legislature “could have used the words ‘vacant or undeveloped land of another’ ” in § 73301(1) if the RUA was only *676 meant to apply to vast areas of land. Ante at 665-666. This, however, ignores the fact that the Legislature has shown in § 73301(2) that it knows how to use clear wording when it wants the statute to apply to all land. In § 73301(2) of the statute, the Legislature used the phrasing “land of any size including, but not limited to, urban, suburban, subdivided, and rural land.” The majority even admits that this is a “clear indication” of the Legislature’s intent for § 73301(2) to apply to land of any size. Ante at 669 n 11. If the Legislature meant for both subsections of the statute to apply to all land of any size, then it would not have chosen to use different phrasing to mean the exact same thing.
III. THE REENACTMENT RULE
Under the reenactment rule, “ [i]f a legislature reenacts a statute without modifying a high court’s practical construction of that statute, that construction is implicitly adopted.” People v Hawkins, 468 Mich 488, 519; 668 NW2d 602 (2003) (CAVANAGH, J., dissenting), citing 28 Singer, Statutes and Statutory Construction (2000 rev), Contemporaneous Construction, § 49.09, pp 103-112. The Legislature “is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it [reenacts] a statute without change . . . .” Lorillard, a Div of Loew’s The-atres, Inc v Pons, 434 US 575, 580; 98 S Ct 866; 55 L Ed 2d 40 (1978). “The reenactment rule differs from the legislative-acquiescence doctrine in that the former canon provides ‘prima facie evidence of legislative intent’ by the adoption, without modification, of a statutory provision that had already received judicial interpretation.” Hawkins, supra at 488, quoting Singer at 107.
*677 The majority chooses to dismiss the Legislature’s amendments of the RUA because they are not a “clear indication” of the Legislature’s intent. But the actions of the Legislature could not be much clearer. After this Court’s decision in Wymer, the Legislature twice amended the RUA, yet the Legislature did not address the alleged “error” in Wymer. Notably, the Legislature amended § 73301(2) of the statute to indicate that it applied to “land of any size, including, but not limited to, urban, suburban, subdivided, and rural land.” The Legislature did not incorporate this same language in § 73301(1). If this Court’s decision in Wymer were incorrect, the Legislature could have resolved this “error” by adding the same language to subsection 1 as it did to subsection 2. In amending the statute, the Legislature stated that subsection 2 applied to “land of any size .. ..” Because the Legislature did not make a similar amendment of subsection 1, the Legislature’s manifest intent that Wymer was correctly decided could not be clearer.
IV CONCLUSION
Plaintiffs injury occurred while at defendant’s home, which is located in a residential subdivision. Plaintiff was injured while on defendant’s lawn-, a lawn that defendant had mowed that very day. While the majority asserts that the RUA bars plaintiffs claim, the practical import of the majority’s tortuous reasoning is that any outdoor recreational activity that occurs on any parcel of land will fall within the purview of the statute. On the basis of the words chosen by the Legislature, as well as its actions in amending the statute, I do not believe that our Legislature intended for the RUA to cover activities such as those that routinely take place at *678 children’s outdoor birthday parties.[3] While the majority may believe that a statute found in the Natural Resources and Environmental Protection Act was meant to cover a spirited game of pin-the-tail-on-the-donkey, I have more faith in the wisdom of our Legislature and more respect for the actions it has taken.
Accordingly, I respectfully dissent and would affirm the decision of the Court of Appeals because plaintiffs claim is not barred by the Recreational Land Use Act.
KELLY, J., concurred with CAVANAGH, J.

 Wymer interpreted a former version of the rua, but the difference is not relevant to the issue or outcome of this case.

 The majority improperly characterizes my use of the doctrine of ejusdem generis. Because the majority ignores the Legislature’s intent, I use the doctrine to examine the types of activities the Legislature meant to include when it used the phrase “any other outdoor recreational use.” A proper use of ejusdem generis leads to the conclusion that the activities covered by the statute are only those engaged in on large, open tracts of land, consistent with Wymer’s interpretation of the statute. While I do not believe that the Legislature meant to include activities such as a rousing game of shuffleboard or horseshoes, the majority’s strained reading of the statute now covers activities such as those.

 Following today’s decision, people invited to such a party, or to a neighborhood barbecue, should be forewarned to “be sure to bring a dish (consideration) to pass.”