# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## ROTT v ROTT

Docket No. 161051. Argued on application for leave to appeal on April 8, 2021. Decided July 30, 2021.

Doreen Rott brought a negligence and premises-liability action in the Oakland Circuit Court against Arthur Rott, seeking to recover damages for injuries she received after riding defendant's self-installed zip line at his house. Plaintiff attended a family dinner party at defendant's house on the day she was injured. She watched several people successfully use the zip line before riding it herself. Plaintiff injured her knee when she prematurely put her legs down to make contact with the ground thinking that the ride was over. Defendant moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiff's complaint should be dismissed under the recreational land use act (RUA), MCL 324.73301, because plaintiff was on his property for the purpose of zip lining, plaintiff did not pay him for use of the zip line, and plaintiff's injuries were not caused by the gross negligence or willful and wanton conduct of defendant. Plaintiff argued that the statute did not apply. The court, Cheryl A. Matthews, J., granted in part and denied in part defendant's motion. The court agreed with defendant that the RUA applied to the facts of the case but denied the request for dismissal, concluding that a genuine issue of material fact existed regarding whether plaintiff's injuries were caused by defendant's gross negligence or willful and wanton misconduct, precluding application of the RUA.

Both parties sought leave to appeal. In her application, plaintiff argued that the RUA did not apply (Court of Appeals Docket No. 336242). Defendant argued in his application that the trial court should have granted summary disposition in his favor because no genuine dispute of material fact existed about whether his conduct amounted to gross negligence or was willful and wanton (Court of Appeals Docket No. 336240). The Court of Appeals denied plaintiff's application "for failure to persuade the Court of the need for immediate appellate review," but it granted defendant's application for leave to appeal, limited to the issues raised in his application. In an unpublished per curiam opinion issued December 18, 2018 (*Rott I*), the Court of Appeals, CAVANAGH, P.J., and SERVITTO and CAMERON, JJ., reversed the trial court's order and remanded for entry of an order granting summary disposition in favor of defendant, concluding that there was no genuine issue of material fact that defendant's conduct did not amount to gross negligence or willful and wanton misconduct. On remand, the trial court entered an order granting summary disposition in favor of defendant. Plaintiff appealed, and the Court of Appeals, K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ., affirmed. 331 Mich App 102 (2020) (*Rott II*). The Court

concluded that in *Rott I*, it had implicitly decided that the RUA applied because it had determined that plaintiff's factual showing failed to meet the RUA's standards and that plaintiff was therefore barred under the law-of-the-case doctrine from again raising that issue. Nevertheless, the Court addressed the substance of plaintiff's arguments. It applied the last-antecedent rule when interpreting the RUA to conclude that the statute applies when a person does not pay the owner of the land a valuable consideration for the purpose of the recreational activity, reasoning that the word "for" modified the immediately preceding phrase "a valuable consideration" in the statute. In addition, the Court determined that under *Neal v Wilkes*, 470 Mich 661 (2004), the RUA barred her suit because although she had originally entered defendant's property for a family party, plaintiff was on the property for the purpose of zip lining at the time of the accident and zip lining fit within the plain meaning of the phrase "any other outdoor recreational use." Plaintiff sought leave to appeal.

In an opinion by Justice WELCH, joined by Chief Justice MCCORMACK and Justices BERNSTEIN, CLEMENT (except for the discussion of the law-of-the-case doctrine in Part III), and CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

The law-of-the-case doctrine may not be invoked to preclude appellate review of a contested question of law that was presumed but not decided against a party in an interlocutory appeal if doing so would deprive the party of their right to appeal an unfavorable trial court decision on that issue. Accordingly, plaintiff could contest the RUA's applicability on appeal because her prior claim on the merits was never reviewed and because the Court of Appeals presumed but did not decide the RUA's applicability when resolving defendant's interlocutory appeal. The Supreme Court's holding in *Neal*—that the RUA applies when an individual is injured while on another's land without paying consideration for access and when their purpose at the time of the accident is participation in an "outdoor recreational use or trail use" that is covered by the statute—was reaffirmed. For purposes of the RUA, we interpret the catchall phrase "any other outdoor recreational use" to include activities in which (1) the activity traditionally could not be engaged in indoors and (2) the activity requires nothing more than access to the land—that is, permission to be present and not trespassing—to engage in the activity or use. Given our caselaw, the language of the RUA, and the evolution of the statute, zip lining was not an activity covered by the RUA's catchall phrase; the judgment of the Court of Appeals was reversed as was the trial court order granting summary disposition in favor of defendant.

1. Under the law-of-the-case doctrine, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court should not be differently determined on a subsequent appeal in the same case when the facts and law remain materially the same. In other words, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals. The purpose of the doctrine is primarily to maintain consistency and avoid reconsideration of matters once decided during a single continuing suit. The goal of promoting consistency in judgments would not be furthered by applying the law-of-the-case doctrine to legal questions that were presumed without mention but not decided in an interlocutory appeal. Therefore, the doctrine does not operate to preclude appellate review of a contested question of law that was presumed but not decided against a party in an interlocutory appeal if doing so would deprive the party of their right to appeal an unfavorable trial court decision on that issue. The law-of-the-case doctrine applies only to those issues actually decided, either implicitly or

explicitly, in the prior appeal. As a result, the doctrine does not apply to orders denying leave to appeal when those orders were not rulings on the merits of the issues presented. Moreover, manifest injustice would result if the law-of-the-case doctrine were invoked in a manner that would deprive a party of its right to appeal an issue decided against it by a trial court. The Court of Appeals did not implicitly decide the applicability of the RUA in *Rott I* because (1) that issue was outside the scope of the interlocutory review that was granted in defendant's application and (2) the Court of Appeals denied plaintiff's request for interlocutory review of the trial court's decision regarding applicability of the RUA. In granting defendant's application, the Court of Appeals limited his interlocutory appeal to those issues raised in his application and supporting brief. Because his application and supporting brief did not include an issue related to the applicability of the RUA, that issue was outside the scope of the appeal in *Rott I* as framed by the Court of Appeals. While the *Rott I* Court analyzed the case as if the RUA applied, it presumed such application without stating that the trial court correctly determined that the RUA applied, determining that the facts did not establish gross negligence and that defendant was entitled to summary disposition. As a result, *Rott I* presumed but did not decide, expressly or implicitly, that the RUA applied. The Court of Appeals erred in *Rott II* by concluding that the law-of-the-case doctrine barred plaintiff's challenge to the applicability of the RUA. Although the Court of Appeals analyzed the merits of the case despite its conclusion on the applicability of the law-of-the-case doctrine, the issue was not moot because it was unknown the extent to which the panel's view of the law-of-the-case issue informed its analysis of the merits.

2. Except as otherwise provided in MCL 324.73301, a cause of action does not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee. When originally enacted, the statute applied only to those coming onto the land of another for the purpose of fishing, hunting, or trapping. The Legislature expanded the scope of included activities by amendment over the years; however, zip lining has never been expressly added to the statute. The general purpose of the RUA is to encourage landowners to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes; it is not intended to shield landowners from all liability from every form of recreation that could conceivably occur outdoors. The RUA limits liability for injuries to a person who is on the owner's land for the purpose of certain specified activities. Under *Neal*, the initial purpose for which a person enters the land, such as for a social visit, is not the proper focus for determining whether the act applies. Instead, the RUA applies to individuals who, *at the time of the injury*, are on the land of another for a specified purpose, i.e., for the purpose of one of the listed recreational uses ending in the catchall phrase "any other outdoor recreational use." The Court of Appeals unnecessarily applied the last-antecedent rule to the language "for the purpose of" in *Rott II* because the interpretation of that language was resolved in *Neal*—which held that MCL 324.73301(1) applies when an individual was injured while on another's land, without paying consideration for access, and their purpose at the time of the accident was participation in an "outdoor recreational use or trail use" that was covered by the statute. While plaintiff entered defendant's property for a family get together (i.e., a social visit), at the time of the accident, she was on defendant's property for the purpose of zip lining.

3. The RUA does not apply to *any* outdoor recreational activity but, instead, is limited to those outdoor recreational uses of the same kind, class, character, or nature as those specifically enumerated in the RUA. The word "recreational" means a refreshment or diversion. The listed activities do not involve any particular heightened degree of physical intensity or inherent risk, and beach play—i.e., building sand castles, throwing stones in the water, and splashing around—is included within the RUA's catchall phrase. Given our caselaw, the language of the RUA, and the evolution of the statute, the most reasonably unifying characteristics shared by the activities listed in the RUA are that (1) the activity traditionally could not be engaged in indoors and (2) the activity requires nothing more than access to the land—that is, permission to be present and not trespassing—to engage in the activity or use. The listed activities are things that could historically and traditionally only be performed and enjoyed outdoors, with nothing more than access to the land or water. While enjoyment of the listed activities may be enhanced or accompanied by modifications to the land, such as the construction of a deer blind, a dock, or a cleared trail, such modifications are not a prerequisite to engaging in the activities. Although some of the listed activities require or imply that recreational users bring their own equipment, vehicle, or other personal property, that is not uniformly required, and bringing equipment does not require that the user modify the land. Zip lining does not constitute "any other outdoor recreational use" for purposes of the RUA because it meets only one of the two identified unifying characteristics: specifically, although zip lining traditionally could only be enjoyed outdoors, it was not an activity or use that required only access to the land to enjoy. Instead, it could not be performed without artificial modifications of or enhancements to the land—specifically, the construction of zip-lining facilities or the installation of zip-lining equipment. Accordingly, the Court of Appeals erred by holding that under the canon of interpretation *ejusdem generis*, zip lining was included within the RUA's catchall phrase "any other outdoor recreational use."

Court of Appeals judgment reversed, trial court's 2019 order granting summary disposition to defendant reversed, and case remanded to the trial court.

Justice CLEMENT, concurring in part and concurring in the judgment, agreed with all portions of the majority's opinion except for its discussion of the law-of-the-case doctrine in Part III. She agreed that *Rott I* resolved only those issues the Court of Appeals agreed to resolve when it granted defendant's application and that the opinion ought not be construed as implicitly resolving issues the Court of Appeals had expressly declined to hear when it denied plaintiff's application. Justice CLEMENT would have concluded that this was an adequate basis for the majority's decision and would not have invoked equitable principles in addressing the Court of Appeals' treatment of the law-of-the-case doctrine in *Rott II*.

Justice VIVIANO, joined by Justice ZAHRA, concurring in part and dissenting in part, agreed with the majority that the Court of Appeals' construction of "for the purpose of" in the RUA conflicted with *Neal* and that the portion of the *Rott II* opinion related to its application of the last-antecedent rule should be vacated. He dissented because he disagreed with the majority's analysis of the law-of-the-case doctrine and with its conclusion that zip lining is excluded from the scope of the RUA under the *ejusdem generis* canon of interpretation. Because the Court of Appeals fully and correctly addressed the merits of plaintiff's arguments related to the RUA, it was unnecessary for that Court to analyze the law-of-the-case doctrine. With regard to zip lining and the RUA, the *ejusdem generis* canon addresses situations in which the ordinary meaning of the catchall, one which a reasonable reader would discern, is different than the literal, definitional meaning of the

catchall.  Given the difficulties in the application of the canon, courts should be cautious when applying it; the canon is not always applicable to a list followed by a catchall.  Here, the diversity of the enumerated activities makes it difficult to discern a common characteristic.  The majority's attempt to limit the catchall phrase in the RUA to activities that traditionally could not be engaged in indoors was not only vague but was also irrelevant in this case given its conclusion that zip lining was a traditional outdoor activity.  The majority's second limitation—that the activity require nothing more than access to the land to engage in the activity or use—did not arise from a relevant common feature of the enumerated items.  Except possibly for hiking and sightseeing, the listed activities in MCL 324.73301(1) call for the use of artificial equipment or some form of modification to the land.  Imposing that limitation leads to the head-scratching result that the RUA covers motorcycling, snowmobiling, and hiking on a human-made course or cleared trail but would not cover swinging from a rope hanging from a tree simply because riding or hiking could conceivably occur without the course or trail but swinging could not occur without attaching the rope to a tree or another natural feature.  It was unnecessary to decide whether or how the *ejusdem generis* canon applied in this case because zip lining clearly fell within the plain meaning of the RUA's catchall phrase "any other outdoor recreational use" and was not excluded from any conceivable limitation arising from the listed recreational activities.  Therefore, Justice VIVIANO would have vacated the Court of Appeals' discussion of the law-of-the-case doctrine as unnecessary and would have affirmed the Court of Appeals' conclusion that the RUA included zip lining as a protected activity.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 30, 2021

STATE OF MICHIGAN

SUPREME COURT

DOREEN ROTT,

      Plaintiff-Appellant,

v

No. 161051

ARTHUR ROTT,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

WELCH, J.

This case arises out of a zip-lining accident in defendant Arthur Rott's backyard. Plaintiff, Doreen Rott, sued defendant after she was injured when she prematurely touched the ground before the end of the ride. To resolve this case, the Court must address the limits of the law-of-the-case doctrine and the scope of the recreational land use act (RUA), MCL 324.73301(1). Defendant raises the RUA as a defense to plaintiff's negligence and premises-liability claims, while plaintiff claims the statute does not apply. On remand from

an interlocutory appeal, the circuit court dismissed plaintiff's claims.  In resolving plaintiff's subsequent appeal by right, the Court of Appeals held that plaintiff's arguments concerning the applicability of the RUA had already been decided against her as a part of defendant's interlocutory appeal and that those arguments were, therefore, barred by the law-of-the-case doctrine.  Despite this holding, the Court of Appeals reached the merits of plaintiff's RUA arguments and held that the RUA applies and bars plaintiff's claims against defendant.

For the reasons that follow, we reverse the Court of Appeals' application of the law-of-the-case doctrine and its interpretation of the catchall phrase in MCL 324.73301(1).  We hold that plaintiff can contest the RUA's applicability on appeal because her prior claim on the merits was never reviewed, and we hold that zip lining is not an activity covered by the RUA.  We also reverse the Oakland Circuit Court's order granting summary disposition to defendant and remand this case to the circuit court for further proceedings consistent with this opinion.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The events in question occurred in May 2015 while plaintiff attended a weekend social party at defendant's home in West Bloomfield.  The defendant, plaintiff's brother, had installed a zip line in his backyard about a year earlier with the assistance of his neighbor.  Before the May 2015 party, plaintiff had repeatedly declined to ride the zip line.  According to plaintiff, after watching others ride the zip line and in response to continued pressure from defendant, plaintiff agreed to take a single ride on the zip line.  Near the end of the ride, while still in motion, plaintiff put her legs down to reach the ground thinking

2

that "the ride was over." The resulting impact with the ground caused two meniscal tears in plaintiff's left knee that required surgery.

Plaintiff sued defendant on theories of negligence and premises liability. Following discovery, defendant moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that the RUA applied and barred plaintiff's claims unless she could prove that defendant's "gross negligence or willful and wanton misconduct" caused the injury. MCL 324.73301(1). In November 2016, the circuit court agreed that the RUA applied but denied defendant's motion, finding that genuine issues of material fact existed as to whether he engaged in "gross negligence or willful and wanton misconduct" under the RUA.

Both parties sought leave to appeal in the Court of Appeals on an interlocutory basis. In her application, plaintiff argued that the RUA did not apply and also filed a motion for peremptory reversal (Court of Appeals Docket No. 336242). Defendant argued in his application that the circuit court should have granted summary disposition in his favor because no genuine dispute of material fact existed about whether his conduct amounted to gross negligence or was willful and wanton (Court of Appeals Docket No. 336240). While defendant did not respond to plaintiff's motion for peremptory reversal, the Court of Appeals special motion panel rejected plaintiff's argument, denied her motion for peremptory reversal, and denied her application "for failure to persuade the Court of the need for immediate appellate review." *Rott v Rott*, unpublished order of the Court of Appeals, entered May 4, 2017 (Docket No. 336242).

On the same day, the Court of Appeals granted defendant's application "limited to the issues raised in the application and supporting brief." *Rott v Rott*, unpublished order of the Court of Appeals, entered May 4, 2017 (Docket No. 336240). In her responsive brief

3

in Docket No. 336240, plaintiff noted the scope of the appeal as defined by the Court of Appeals' prior orders and stated, "Accordingly, this appeal addresses only those issues raised by Defendant/Appellant." Plaintiff also noted that she had not conceded the applicability of the RUA, stating, "Plaintiff/Appellee vehemently maintains that the RUA does not attach to the instant case."

More than a year later, the Court of Appeals issued an unpublished opinion reversing the circuit court. The Court of Appeals acknowledged that the circuit court had held that the RUA applied and then discussed the RUA, stating, "Absent gross negligence or willful and wanton misconduct on the part of defendant, plaintiff cannot recover for damages resulting from the zip line." *Rott v Rott*, unpublished per curiam opinion of the Court of Appeals, issued December 18, 2018 (Docket No. 336240) (*Rott I*), p 4. The court thus presumed, without any analysis or explanation, that the RUA applied. While the court agreed with the circuit court that summary disposition was inappropriate under MCR 2.116(C)(8), it went on to hold that no genuine dispute of material fact existed as to whether defendant's conduct was grossly negligent. Accordingly, the Court of Appeals held that defendant was entitled to summary disposition under MCR 2.116(C)(10) and remanded the case to the circuit court "for entry of an order granting summary disposition for defendant." *Id*. at 6.

On remand, the circuit court followed the Court of Appeals' instructions and entered an order on February 8, 2019, granting defendant summary disposition. Plaintiff then exercised her right to appeal, arguing that the RUA did not apply because (1) she was not on the land "for the purpose of" zip lining and (2) zip lining is not a recreational activity covered by the RUA.

4

The Court of Appeals disagreed in a published opinion, holding that its earlier decision "implicitly decided . . . that the RUA applied to the facts of the case, and plaintiff's arguments on appeal stemming from whether the RUA applies are therefore subject to the law-of-the-case doctrine." *Rott v Rott*, 331 Mich App 102, 107; 951 NW2d 99 (2020) (*Rott II*). Despite this holding, the Court addressed the merits of plaintiff's appeal and rejected both of her arguments. *Id*. at 108-111. Purporting to apply the "last-antecedent rule of statutory construction," the court held:

> Plaintiff argues that the statute should be read so that a cause of action only arises for injuries to a person who has entered another's land "*for the purpose* of" the statutorily enumerated activities or any other outdoor recreational use. (Underlining omitted.) However, the statute actually reads that a cause of action does not arise for injuries to a person "on the land of another *without paying . . . a valuable consideration for the purpose of*" the enumerated activities or any other outdoor recreational use. MCL 324.73301(1) (emphasis added). Under the plain and unambiguous language of the statute and the last-antecedent rule the word "for" in the statute modifies "a valuable consideration." [*Hardaway v Wayne Co*, 494 Mich 423, 427; 835 NW2d 336 (2013).] Therefore, the statute applies if a person does not pay the owner of the land a valuable consideration for the purpose of the recreational activity. MCL 324.73301(1). Defendant testified that neither he nor his wife collected money from anyone to ride the zip line. A plain reading of the statute does not lend itself to plaintiff's interpretation that the statute requires a person to be on the property for the purpose of the recreational activity for the statute to apply. Plaintiff's assertions that she was harassed by defendant into riding the zip line are irrelevant. [*Rott II*, 331 Mich App at 108-109.]

The panel went on, however, to apply *Neal v Wilkes*, 470 Mich 661, 670 n 13; 685 NW2d 648 (2004), in which this Court had rejected a similar argument that the RUA did not apply if the purpose for entering the land was a "social visit" as opposed to a recreational use. *Rott II*, 331 Mich App at 109-110. Relying on *Neal*, the Court of Appeals held that while plaintiff's initial purpose for being on defendant's land may have been a

5

family gathering, at the time of the accident, she was on the land for the purpose of using the zip line. *Id*. at 110. Finally, the Court held that "zip lining is of the same kind, class, character, or nature of the recreational activities enumerated in the" RUA, and it affirmed summary disposition for defendant. *Id*. at 110-111.

Plaintiff then sought leave to appeal in this Court. We scheduled oral argument on the application, MCR 7.305(H)(1), and directed the parties to address: (1) whether the Court of Appeals erred in its application of the law-of-the-case doctrine; (2) the proper interpretation of the "for the purpose of" language in the RUA, MCL 324.73301(1); and (3) whether zip lining is within the scope of the RUA. *Rott v Rott*, 506 Mich 951 (2020).

## II. STANDARD OF REVIEW

We review de novo questions of statutory of interpretation and a trial court's decision to grant or deny summary disposition. *DeRuiter v Byron Twp*, 505 Mich 130, 139; 949 NW2d 91 (2020). Whether the law-of-the-case doctrine was properly invoked and to what extent it applies to a case are questions of law that we also review de novo. See, e.g., *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013).

## III. LAW-OF-THE-CASE DOCTRINE

The law-of-the-case doctrine is a judicially created, self-imposed restraint designed to promote consistency throughout the life of a lawsuit. The idea is that " 'if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same.' " *Grievance Administrator v Lopatin*, 462 Mich 235, 259-260; 612 NW2d 120 (2000),

6

quoting *CAF Investment Co v Saginaw Twp*, 410 Mich 428, 454; 302 NW2d 164 (1981). "Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Lopatin*, 462 Mich at 260. The purpose of the doctrine is "primarily to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.' " *Locricchio v Evening News Ass'n*, 438 Mich 84, 109; 476 NW2d 112 (1991), quoting Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4478, p 788.

In *Lopatin* we made clear that the doctrine applies "only to issues *actually decided*, either implicitly or explicitly, in the prior appeal." *Lopatin*, 462 Mich at 260 (emphasis added). We have specifically held that the law-of-the-case doctrine also does not apply to orders denying leave to appeal when those orders "were not rulings on the merits of the issues presented." *People v Poole*, 497 Mich 1022 (2015). See also *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 112; 888 NW2d 295 (2016) (holding that the law-of-the-case doctrine does "not apply to claims that were not decided on the merits"). This case presents a different situation—one in which the previous ruling was on an interlocutory appeal and the interlocutory ruling presumed a certain decision on the merits but did not actually decide the issue.

In this case, the Court of Appeals held in *Rott II* that it had implicitly decided the applicability of the RUA against plaintiff by ruling in favor of defendant in the *Rott I* interlocutory appeal. We disagree.

> To straightjacket proceedings subsequent to a decision on a case by an appellate court by making assumptions regarding the disposition of arguments which the appellate court did not see fit to consider is not, in our opinion, the wisest of policies. [*People v Fisher*, 449 Mich 441, 447; 537 NW2d 577 (1995) (quotation marks and citation omitted).]

7

The law-of-the-case doctrine " 'merely expresses the practice of courts generally to refuse to reopen what has been decided, *not a limit to their power*.' " *Locricchio*, 438 Mich at 109 (emphasis added), quoting *Messenger v Anderson*, 225 US 436, 444; 32 S Ct 739; 56 L Ed 1152 (1912). We also heed the United States Supreme Court's astute observation that the "doctrine does not apply if the court is convinced that its prior decision is clearly erroneous and would work a manifest injustice." *Pepper v United States*, 562 US 476, 506-507; 131 S Ct 1229; 179 L Ed 2d 196 (2011) (quotation marks, citations, and brackets omitted).

Invocation of the law-of-the-case doctrine in a manner that would effectively deprive a party of its right to appeal an issue decided against it by a trial court would be a manifest injustice. While not as extreme as the risk of manifest injustice in a death penalty habeas corpus case, see *Dobbs v Zant*, 506 US 357; 113 S Ct 835; 122 LEd2d 103 (1993), the deprival of the right to appeal is at least as much an injustice as holding a party to an erroneous concession of law, see *United States v Miller*, 822 F2d 828, 831-833 (CA 9, 1987). We further believe that the goal of promoting consistency in judgments would not be furthered by application of the law-of-the-case doctrine to legal questions that were *presumed without mention but not decided in an interlocutory appeal*. Accordingly, we hold that the law-of-the-case doctrine should not be invoked to preclude appellate review of a contested question of law that was presumed but not decided against a party in an interlocutory appeal if doing so would deprive the party of their right to appeal an unfavorable trial court decision on that issue.[1]

---

[1] Our ruling should not be read as requiring judicial review of an issue that a party waived or conceded before filing its appeal by right.

The Court of Appeals erred by invoking the law-of-the-case doctrine in *Rott II*. At no point during this litigation did plaintiff concede, waive, or forfeit her challenge to the applicability of the RUA. The Court of Appeals' May 4, 2017 order denying plaintiff's interlocutory application for leave to appeal in Docket No. 336242 did not decide the applicability of the RUA, nor was it a decision on the merits. See *Poole*, 497 Mich at 1022; *People v Willis*, 182 Mich App 706, 708; 452 NW2d 888 (1990) (holding that denial of an interlocutory appeal " 'for failure to persuade the Court of the need for immediate appellate review' . . . does not foreclose the parties from pursuit of the same or related issues on later appeals of right"). Because the May 4, 2017 order entered in Docket No. 336240 was "limited to the issues raised in the application and supporting brief," *Rott*, unpub order at 1 (Docket No. 336240), whether the RUA applied was not a question properly before the court in *Rott I*. Stated differently, deciding that issue was outside the scope of the appeal as framed by the Court of Appeals in *Rott I*.[2]

Having framed the case as it did in its two May 4, 2017 orders, the Court of Appeals did not leave itself the option of deciding that the RUA *did not apply*. Taking the Court at its word, it had committed to resolving defendant's arguments in the interlocutory appeal, and also committed to not resolving plaintiff's arguments in that appeal, instead expressing a preference to resolve her arguments on the appeal of right to which she was entitled after

---

[2] While not binding, we note that at least one federal appellate court has held that the law-of-the-case doctrine is not applicable to legal questions that were outside the scope of the earlier appeal. *Transamerica Leasing, Inc v Institute of London Underwriters*, 430 F3d 1326, 1332 (CA 11, 2005) ("Our case law could not be clearer that the law of the case doctrine cannot apply when the issue in question was outside the scope of the prior appeal.").

9

the trial court entered a final judgment. Thus, while *Rott I* analyzed the case as if the RUA applied, it did so under the unstated presumption that the trial court's ruling as to the applicability of the RUA was correct. Based on this presumption, *Rott I* determined that the evidence could not support a finding of gross negligence and accordingly held that defendant was entitled to summary disposition on remand. The procedural history of this case, coupled with the *Rott I* opinion, lead us to conclude that *Rott I* presumed but did not decide, expressly or implicitly, that the RUA applied to the facts of this case.[3]

Under these facts, the Court of Appeals' application of the law-of-the-case doctrine in *Rott II* was incorrect. The court could not have implicitly decided the applicability of the RUA in *Rott I* because that issue was outside the scope of the interlocutory review that was granted and because plaintiff's request for interlocutory review of the trial court's decision on that issue was denied. The Court of Appeals then, despite having invoked the law-of-the-case doctrine, went on to review the merits of plaintiff's arguments. While the merits were ultimately reviewed in this matter, there is no way to know the extent to which the panel's view of the law-of-the-case argument informed its analysis of the merits, so we conclude that the issue is not moot. We further conclude that the Court of Appeals' application of the law-of-the-case doctrine was incorrect and that similar application in different cases could result in future litigants being unjustly deprived of their right to appeal

---

[3] Long ago, this Court recognized that a point of law "assumed without consideration is of course not decided." *Allen v Duffy*, 43 Mich 1, 11; 4 NW 427 (1880). See also *People v Douglas (On Remand)*, 191 Mich App 660, 662; 478 NW2d 737 (1991) ("[D]efendant's reliance on *People v Phelon*, 173 Mich App 157; 433 NW2d 384 (1988), is misplaced, because in *Phelon* a panel of this Court assumed, but did not decide, that the sentencing guidelines applied to safe breaking. *Phelon* has no precedential value with respect to the issue before us.").

a trial court's adverse rulings on the merits. Therefore, we reverse the Court of Appeals' holding regarding the law-of-the-case doctrine.

## IV. INTERPRETATION AND APPLICATION OF THE RUA

This case requires us to once again consider the scope and application of the RUA. In *Wymer v Holmes*, 429 Mich 66, 77; 412 NW2d 213 (1987), overruled on other grounds by *Neal*, 470 Mich 661, we stated that that the general purpose of the RUA was "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes."[4] While in *Neal* we subsequently reversed portions of *Wymer*, the broader statement of the RUA's purpose remains true today. See *Neal*, 470 Mich at 666 n 6.

The RUA has a long history in Michigan that is tied to the use of our state's land and water. The RUA was first introduced in 1953 as a standalone piece of legislation (1953 HB 241), the first of its kind in the nation that "applied only to persons coming upon the lands of another for the purpose of 'hunting.' " *Wymer*, 429 Mich at 74, quoting 1953 House Journal 374, 483. When actually enacted, the law applied only to those coming upon the land of another " 'for the purpose of fishing, hunting or trapping[.]' " *Wymer*, 429 Mich at 74, quoting 1953 PA 201 (emphasis omitted). The RUA was expanded in 1964 to add " 'camping, hiking, sightseeing or other similar outdoor recreational use.' " *Wymer*, 429 Mich at 74, quoting 1964 PA 199. Then, in another expansion, " 'motorcycling, snowmobiling, or any other outdoor recreational use' " was added by

---

[4] In *Neal*, we overruled *Wymer* to the extent that it had held that the RUA was applicable to only large tracts of undeveloped land suitable for outdoor recreational uses and not to urban, suburban, or subdivided lands. See *Neal*, 470 Mich at 667-668.

11

1974 PA 177. *Wymer*, 429 Mich at 75, quoting 1974 PA 177. Through 1995 PA 58, the Legislature incorporated the RUA into the Natural Resources and Environmental Protection Act (NREPA),[5] the purpose of which is to "protect the environment and natural resources of the state." 1994 PA 451, title. See also *Neal*, 470 Mich at 674 (CAVANAGH, J, dissenting). Since 1995, the RUA has been codified as MCL 324.73301(1), alongside other provisions related to other uses of the land, such as entering or exiting a Michigan trailway or engaging in certain farming or agricultural activities. See MCL 324.73301(2) through (7). The substance of MCL 324.73301(1) has not been further amended since 1995.[6]

When properly invoked, MCL 324.73301(1) immunizes the "owner, tenant, or lessee of the land" from liability for injuries occurring on the land, "unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee." When plaintiff was injured in 2015, the relevant portion of the RUA provided:

> Except as otherwise provided in this section, a cause of action shall not arise for injuries to a *person who is on the land of another without paying* to the owner, tenant, or lessee of the land a valuable consideration *for the purpose of* fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, *or any other outdoor recreational use or trail use*, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee. [MCL 324.73301(1), as amended by 2007 PA 174 (emphasis added).]

---

[5] MCL 324.101 *et seq*.

[6] See 2007 PA 174 (indicating no amendments of § 73301(1)); 2017 PA 39 (changing the word "shall" to "does" in § 73301(1), adding a new Subsection (3) to the statute, and renumbering the remaining subsections).

12

In this case, we are focused on the meaning of the language "for the purpose of" and on the meaning of the catchall phrase "any other outdoor recreational use[.]"

As we have often stated, the purpose of statutory interpretation is to understand and give effect to the intent of the Legislature. See, e.g., *Bisio v Village of Clarkston*, 506 Mich 37, 44; 954 NW2d 95 (2020); *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). We must consider "both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 133-134; 860 NW2d 51 (2014) (quotation marks and citation omitted). Each word and phrase in a statute "must be assigned such meanings as are in harmony with the whole of the statute, construed in light of history and common sense." *Honigman Miller Schwartz & Cohn LLP v Detroit*, 505 Mich 284, 295; 952 NW2d 358 (2020) (quotation marks and citation omitted). When the language of the statute remains obscure or doubtful, we may also consider the historical context surrounding its enactment. See *People v Hall*, 391 Mich 175, 191; 215 NW2d 166 (1974).

## A. "FOR THE PURPOSE OF"

The RUA is only triggered when someone is injured while on the land of another for certain purposes and under certain conditions. Plaintiff argues that she was not on defendant's property for the purpose of using the zip line or for any other outdoor recreational use. Rather, she argues that she was on defendant's property for the purpose of a family gathering and that she was coerced into riding the zip line. In rejecting this

13

argument, the Court of Appeals rendered two holdings—one based on the last-antecedent canon of statutory construction and one based on a footnote in *Neal*.

The Court of Appeals attempted to apply the last-antecedent canon to the phrase "for the purpose of" and concluded that it modified the preceding phrase of "a valuable consideration." *Rott II*, 331 Mich App at 108-109. The Court of Appeals held that "the statute applies if a person does not pay the owner of the land a valuable consideration for the purpose of the recreational activity." *Id*. at 109. Conversely, plaintiff argues that "for the purpose of" modifies the subsequent list of activities and catchall provision in MCL 324.73301(1), such that the RUA applies if a person is injured while on the land of another, without paying consideration, for the purpose of engaging in outdoor recreational activities.

It is not clear why the Court of Appeals performed its last-antecedent analysis, given that the interpretation of the "for the purpose of" text was resolved in *Neal*, which the lower court acknowledged.[7] In *Neal*, we rejected an argument quite similar to plaintiff's here; specifically, that the plaintiff had not entered the property to participate in recreation but, rather, for the purpose of "a social visit." *Neal*, 470 Mich at 670 n 13. We explained that the RUA limited liability "for injuries to a person who is 'on the [owner's] land' 'for the purpose of' a specified activity," by which we meant the enumerated list of recreational

---

[7] Despite our cautioning advice, see *Haraway*, 494 Mich at 427-429, the last-antecedent canon is often misapplied or improperly invoked. Generally speaking, only pronouns, relative pronouns, or demonstrative adjectives can have antecedents, and none of these is present in the portions of MCL 324.73301(1) at issue. At least one scholar has questioned the value of the last-antecedent canon and opined that it "contradicts other linguistic principles; it contradicts the historical use of the comma; and . . . [it has] created as much confusion and disagreement as the ambiguous modifier its drafter set out to clarify." LeClercq, *Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers*, 40 Tex J Bus L 199, 207 (2004) (sentence structure omitted).

14

uses ending in the catchall "any other outdoor recreational use." *Id*. (citation omitted; alteration in original); see also *id*. at 668 n 10. We held that the initial purpose for which one "enter[s]" the land was not the proper focus. *Id*. at 670 n 13 (emphasis omitted). Instead, the RUA applies "to individuals who, *at the time of the injury*, *are on the land* of another *for a specified purpose*." *Id*. (emphasis added). No party has asked us to reconsider this holding from *Neal*, and we decline to do so at this time.

Applying this rationale, we affirm in part and vacate in part the Court of Appeals' analysis of the language "for the purpose of" in MCL 324.73301(1). The Court of Appeals' ruling conflicted with *Neal* by stating that the RUA does not "require[] a person to be on the property for the purpose of recreational activity . . . ." *Rott II*, 331 Mich App at 109. We reaffirm *Neal* in holding that MCL 324.73301(1) applies when an individual is injured while on another's land, without paying consideration for access, and his or her *purpose at the time of the accident* is participation in an "outdoor recreational use or trail use" that is covered by the statute. See *Neal* 470 Mich at 667-668, 670 n 13.

B. "ANY OTHER OUTDOOR RECREATIONAL USE"

This Court has not previously defined the outer limits of what activities and uses the RUA covers. While the diversity of the recreational uses and activities listed in MCL 324.73301(1) makes it difficult to pluck a single unifying characteristic, the task is not insurmountable. The statute is worded to cover "fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, *or any other outdoor recreational use or trail use*[.]" MCL 324.73301(1) (emphasis added). As we stated in *Neal*, "the RUA does not apply to *any* outdoor recreational activity" and is limited to include "only those outdoor

15

recreational uses 'of the same kind, class, character, or nature' " as those specifically enumerated in MCL 324.73301(1). *Neal*, 470 Mich at 669. *Neal* did not require us to elaborate on the boundaries of those limitations. More recently, we focused on the word "recreational," defining that term as " 'a means of refreshment or diversion[.]' " *Otto v Inn at Watervale, Inc*, 501 Mich 1044, 1045 (2018), quoting *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "recreation"). We also rejected the notion that "all of the listed activities involve any particular heightened degree of physical intensity or inherent risk" and held, without adopting any overarching limitations, that beach play—" 'building sand castles, throwing stones in the water, and splashing around' "—is covered by the RUA's catchall phrase. *Id*. at 1044-1045.

Building on the statutory text, our prior decisions, and the historic evolution of the RUA, we hold that the most reasonable unifying characteristics shared by the activities listed in MCL 324.73301(1) are that (1) the activity traditionally could not be engaged in indoors[8] and (2) the activity requires nothing more than access to the land—i.e., permission

---

[8] Determining whether a recreational use that is not enumerated in the RUA traditionally could not be engaged in indoors will require consideration of the history of the activity in question and whether it was, as a matter of customs and norms, a primarily outdoor venture for all or much of its existence. While the dissent criticizes this limitation by calling attention to the birth of Supercross, a high-octane competitive motorcycling sport held primarily in large open-air arenas for *paying* audiences beginning in the 1970s, the encyclopedia and magazine article referred to by the dissent appear to acknowledge that before that time motorcycling as a form of *recreation* was primarily (if not exclusively) an outdoor activity. The first Supercross event was held in the Los Angeles Coliseum in 1972, *The History of Supercross - 40th Anniversary* <https://www.motosport.com/blog/the-history-of-supercross-40-years> (accessed July 23, 2021) [https://perma.cc/VM9S-XUBR], which was (and still is) an open-air outdoor sports stadium. See *The Los Angeles Coliseum History* <http://lamcc.lacounty.gov/History> (accessed July 23, 2021)

16

to be present and not trespassing—to engage in the activity or use.[9]  The listed activities—

fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, and

snowmobiling—are things that traditionally could only be performed outdoors and that one

can enjoy with nothing more than access to the land or water.  While enjoyment of the

listed activities may be enhanced or accompanied by modifications to the land, such as the

construction of a deer blind, a dock, or a neatly cleared trail,[10] these modifications are not

prerequisites to engaging in the activity.  Additionally, some of the listed activities require

or imply that recreational users bring their own equipment, vehicle, or other personal

property (for example, a tent or motorcycle), but this is not a uniform requirement.  And

bringing equipment does not require that the user modify the land.

This construction is consistent with our longstanding view that "the purpose of the

RUA is to encourage owners of private land to make their land available to the public[.]"

*Neal*, 470 Mich at 666, n 6.  See also *Ballard v Ypsilanti Twp*, 457 Mich 564, 576-577; 577

NW2d 890 (1998) ("The [RUA] passed in 1953 in response to fears that potential

---

[https://perma.cc/M5FP-DAYW].  But the evolution of motorcycling as a sport does not change its traditional and historical roots.

[9] This Court opined in *Neal*, 470 Mich at 669, that the interpretive principle that forms the basis of the *ejusdem generis* canon is applicable to the RUA and strongly suggested that the catchall phrase should not be read literally.  We have never retracted this statement, but until now the Court has declined to take on the difficult task of determining what limitations are applicable to the RUA's catchall phrase.  We now rise to the occasion, and while the dissent disagrees with the limitations we adopt today, it does not offer broader, narrower, or different limitations.

[10] While not applicable to this case, we note that the RUA's catchall phrase has a second component that covers trail uses.  See MCL 324.73301(1) ("any other outdoor recreational use *or trail use*") (emphasis added).

17

negligence liability would discourage property owners from allowing others to use their property for recreational purposes. . . . The act limited liability in order to encourage landowners to open their property to others for recreation.") (paragraph structure omitted); *Wymer*, 429 Mich at 77 (noting that the statute exists "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes"). The RUA has long existed so that landowners will make their land open and available for a variety of recreational activities that traditionally could only be engaged in outdoors. Stated differently, the RUA was intended to increase Michigander's *access* to privately owned lands so the lands could be *used* for certain forms of recreation by decreasing a landowner's exposure to liability. The RUA was not intended to shield landowners from all liability from every form of recreation that could conceivably occur outdoors.

## C. ZIP LINING DOES NOT FALL WITHIN THE RUA'S CATCHALL PROVISION

The next question is whether zip lining falls within the RUA's catchall provision of "any other outdoor recreational use[.]" The Court of Appeals held that "zip lining is of the same kind, class, character, or nature of the recreational activities enumerated in the [RUA]" and therefore "the trial court properly granted summary disposition" to defendant. *Rott II*, 331 Mich App at 110-111. *Rott II* purported to rely on the interpretive canon *ejusdem generis*[11] and our decisions in *Neal* and *Otto*. Plaintiff argues that zip lining is

---

[11] " '[Ejusdem generis] is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated.' "

18

distinguishable because it requires construction of an artificial feature on the land whereas all of the enumerated activities can be accomplished through direct interaction with flora and fauna in their unaltered state. Plaintiff further compares zip lining to amusement park rides and asserts that it is an activity undertaken for adrenaline-pumping and thrill-seeking purposes, not refreshment and diversion. To the contrary, defendant asserts that zip lining is an outdoor activity done for refreshment and diversion, like the beach play at issue in *Otto*, and that it thus fits within the RUA's catchall provision. We agree with plaintiff that zip lining is not a use of the land covered by MCL 324.73301(1), but for slightly different reasons.

While the zip line at issue was not commercialized and was constructed by defendant for his own personal recreation, we find that zip lining itself does not constitute "any other outdoor recreational use" as that phrase is used in the RUA. This is because zip lining meets only one of the two unifying characteristics that we have identified. Despite being an activity that traditionally could only be performed outdoors,[12] zip lining is not an activity or use that requires only access to the land to enjoy. As argued by plaintiff, one is required to construct zip-lining facilities or install zip-lining equipment on the land as a prerequisite to engaging in the activity. But it is not the presence of an artificial construct itself that takes zip lining beyond the scope of the RUA; instead, it is the fact that zip lining cannot be performed without such modifications or enhancements to the land. Stated

---

*Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000), quoting *People v Brown*, 406 Mich 215, 221; 277 NW2d 155 (1979) (alteration in original).

[12] There are now hundreds of for-profit indoor zip-line facilities throughout the United States, but it is clear from the history of zip lining that it was exclusively an outdoor land use until relatively recently.

19

differently, it is not possible to use a zip line without installing human-made zip-lining equipment on the land, and this distinguishes the activity from any of those enumerated in MCL 324.73301(1). Without such construction, a zip line cannot exist. While it is true that many hunters may use a tree stand or a blind, one is perfectly capable of hunting without making any changes to the land. Similarly, riding a motorcycle off road may be easier or more enjoyable when there is a human-made track or trail, but it is not a prerequisite for engaging in the activity.

Our analysis should not be confused as undermining the principal holding of *Neal*. The RUA continues to apply to large and small tracts of land, both developed and undeveloped, as we previously held. *Neal*, 470 Mich at 671-672. Once one moves beyond those activities specifically listed in the RUA, however, one must consider whether the unlisted activity or use is something that (a) traditionally could only occur outdoors and (b) can be engaged in by merely having access to the land without needing to change it. Riding a zip line does not fit within these parameters because it requires, at a minimum, the construction of launching and stopping points/platforms and the rigging of a cable or wire to support riders. These things must be installed onto the land (and may even become fixtures). This is distinguishable from a hunting tree stand because, as already noted, a tree stand is not a prerequisite to engaging in hunting, even if it may enhance hunting.

We further note that zip lines were not established as a form of outdoor recreation at the time of the last two amendments of the RUA. When the language "motorcycling, snowmobiling, or any other outdoor recreational use" was added to the RUA by 1974 PA

20

177, zip lining was not considered a recreational activity.[13]  When the RUA was made a part of the NREPA and codified at MCL 324.73301(1) in 1995, see 1995 PA 58, zip lining was still an emerging, novel form of tourism-oriented recreation that was not established in Michigan.  The parties have provided nothing to suggest that the Legislature was aware of zip lining as a form of recreation in 1974 or 1995 or that it considered zip lining to be a form of outdoor recreation covered by the RUA.  The Legislature also did not expand the activities or uses enumerated in MCL 324.73301(1) when it amended other portions of the statute in 2007 and 2017, see 2007 PA 174 and 2017 PA 39, nor has it amended the scope of the catchall provision.  Our review of the text and the history of MCL 324.73301(1) thus reveals no support for defendant's argument that the Legislature intended zip lining to be an "outdoor recreational use" covered by the RUA.

As a result, the Court of Appeals erred when it held that "zip lining fits the plain meaning of 'any other outdoor recreational use' and is not excluded by any interpretation of the general provision in the RUA under *ejusdem generis* . . . ."  *Rott II*, 331 Mich App at 111.  As discussed, zip lining is not of the same kind, class, character, or nature as "fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, [or]

---

[13] The modern use of zip lines as a form of ecotourism or recreation can be linked to a tree canopy study conceived by Donald Perry, a California State University graduate student who was studying rainforest canopies in Costa Rica in 1974.  See generally, Perry, *Life Above the Jungle Floor* (Simon & Schuster, 1986).  In the 1990s, a Canadian businessman, Darren Hreniuk, sought to transform this method of treetop transportation into a profitable tourism business by opening the first-of-its-kind Original Canopy Tour between 1994 and 1997 in Costa Rica and patenting the tree-canopy zip-line technology.  Loose, *What's That Line?*, The Washington Post (November 13, 2005), p P01.  Since then, the use of zip lines as a form of ecotourism has grown into a global industry, and as this case demonstrates, has expanded into backyard recreation.

snowmobiling," and there is no evidence that the activity was known to the Legislature or intended to fall under the RUA.[14]  Accordingly, the Court of Appeals' interpretation of the RUA's catchall provision to include the zip-lining activities at issue is reversed.

## V.  CONCLUSION AND RELIEF

We hold that the law-of-the-case doctrine did not preclude plaintiff from challenging the applicability of the RUA, MCL 324.73301(1), to the facts of this case.  We vacate the Court of Appeals' analysis of "for the purpose of" in MCL 324.73301(1) to the extent it relied on the last-antecedent canon of statutory interpretation and affirm its analysis of the same language under *Neal*.  We further hold that the RUA's catchall phrase "any other outdoor recreational use" does not apply to plaintiff's use of defendant's property for zip lining.  Accordingly, we reverse the judgment of the Court of Appeals, reverse the Oakland Circuit Court's February 8, 2019 order granting summary disposition in favor of defendant, and remand this case to the circuit court for further proceedings consistent with this opinion.

<div style="margin-left:50%">

Elizabeth M. Welch
Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement (except for
the discussion of the law-of-
the-case doctrine in Part III)
Megan K. Cavanagh

</div>

---

[14] We further note that if zip lining were within the scope of the RUA, it would be difficult to conceive how the RUA's catchall provision could have any reasonable limitations. Would that statute apply to jumping on a trampoline or, as the dissenting opinion in *Neal* speculated, a game of hopscotch or jump rope?  See *Neal*, 470 Mich at 674 (CAVANAGH, J., dissenting).  Future cases may be more difficult to resolve than this one, and it may be beneficial for the Legislature to revisit the RUA to clarify the intended scope of the statute.

S T A T E   O F   M I C H I G A N

SUPREME COURT

DOREEN ROTT,

      Plaintiff-Appellant,

v

                                      No. 161051

ARTHUR ROTT,

      Defendant-Appellee.

_____

CLEMENT, J. (*concurring in part and concurring in the judgment*).

    I concur in the result reached by the Court, and I concur in the analysis of all portions of the majority opinion except for its discussion of the law-of-the-case doctrine in Part III. Both parties filed interlocutory applications for leave to appeal in the Court of Appeals challenging the trial court's rulings, and in addressing those applications, the Court of Appeals agreed to resolve defendant's issues but declined to resolve plaintiff's. I agree with the majority that the Court of Appeals' opinion in *Rott I* must be construed as resolving only those issues the Court of Appeals had agreed to resolve when it granted defendant's application and that it ought not be construed as implicitly resolving issues the Court of Appeals had expressly declined to resolve when it denied plaintiff's application. However, I believe this is an adequate basis for our decision, and therefore, I would not also invoke equitable principles in addressing the Court of Appeals' treatment of the law-of-the-case doctrine in *Rott II*.

                                        Elizabeth T. Clement

STATE OF MICHIGAN

SUPREME COURT

DOREEN ROTT,

      Plaintiff-Appellant,

v                                        No. 161051

ARTHUR ROTT,

      Defendant-Appellee.

_____

VIVIANO, J. (*concurring in part and dissenting in part*).

The majority opinion contains three holdings: (1) the Court of Appeals improperly applied the law-of-the-case doctrine; (2) it misinterpreted the phrase "for the purpose of" in the recreational land use act (RUA), MCL 324.73301(1); and (3) zip lining is excluded from the scope of the RUA under the canon of interpretation known as *ejusdem generis*. I agree with the majority's second holding, specifically that the Court of Appeals' construction of "for the purpose of" was inconsistent with our decision in *Neal v Wilkes*, 470 Mich 661, 670 n 13; 685 NW2d 648 (2004). But I disagree with the majority's other holdings. I would not address the law-of-the-case doctrine but, instead, would vacate that portion of the Court of Appeals' opinion. In my view, because the Court of Appeals reached the merits and correctly concluded that the RUA applies, there is no need to decide the applicability of the law-of-the-case doctrine. Finally, I would hold that zip lining falls within the purview of the RUA because I disagree that the *ejusdem generis* canon supports the majority's interpretation of the statute.

## I. LAW OF THE CASE

Plaintiff, Doreen Rott, first challenges the Court of Appeals' application of the law-of-the-case doctrine in its second opinion in this case to bar her arguments.[1] The majority is troubled by the Court of Appeals' invocation of the law-of-the-case doctrine, and rightly so. The combination of the Court of Appeals' order denying plaintiff's interlocutory appeal on the grounds that it did not warrant immediate attention and its later opinion applying the doctrine would have deprived plaintiff of the opportunity to have her appellate arguments heard and decided on the merits. But the Court of Appeals did not need to reach this issue and, consequently, neither would I. Because the Court of Appeals fully addressed the merits of plaintiff's statutory arguments and correctly decided the case on those grounds, it had no reason to opine on the law-of-the-case doctrine. I would therefore vacate its discussion of the doctrine as unnecessary and leave the matter for another day.[2]

---

[1] The doctrine provides that " 'if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same.' " *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (citation omitted).

[2] In reaching the issue, the majority suggests that the Court of Appeals did not implicitly decide the RUA's applicability in its first opinion in this case. As a factual matter, this is incorrect. The Court of Appeals' 2018 opinion specifically recognized the trial court's determination that the RUA applied to these facts; expressly stated that "[a]bsent gross negligence or willful and wanton misconduct on the part of defendant, plaintiff cannot recover for damages resulting from the zip line"; concluded that defendant's conduct at most amounted to ordinary negligence, which is "insufficient to create a material question of fact as to whether the RUA's exception applies"; and remanded "for entry of an order granting summary disposition for defendant" because there was no question of material fact that plaintiff had failed to make the showing required by the RUA. *Rott v Rott*, unpublished per curiam opinion of the Court of Appeals, issued December 18, 2018 (Docket No. 336240) (*Rott I*), pp 4-6. In other words, the Court of Appeals' decision ended the case based on its conclusion that the RUA barred plaintiff's claim. It cannot, therefore,

2

## II.  THE RUA

With regard to the issues of statutory interpretation, at the time of plaintiff's accident the RUA stated:

> Except as otherwise provided in this section, a cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant, or lessee of the land a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant, or lessee of the land unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee.  [MCL 324.73301(1), as amended by 2007 PA 174.][3]

### A.  "FOR THE PURPOSE OF"

Plaintiff first focuses on the phrase "for the purpose of."  She argues that the RUA "turns upon *the reason* an individual is on the land of another . . . ."  If she enters for recreation, plaintiff explains, the statute applies.  In this case, she claims that she went to defendant Arthur Rott's house for a party, not to ride on a zip line.

The Court of Appeals rejected this argument in a two-part analysis.  The first part attempted to apply the last-antecedent canon to the phrase "for the purpose of."  *Rott v Rott*, 331 Mich App 102, 107; 951 NW2d 99 (2020) (*Rott II*).  Under that canon, "a modifying or restrictive word or clause contained in a statute is confined solely to the immediately

---

be denied that the Court of Appeals indeed decided the RUA's applicability in its initial decision.  And because an implicit decision is enough to trigger the law-of-the-case doctrine, *Lopatin*, 462 Mich at 260, it would appear to me that the doctrine applies unless some exception exists in these circumstances.  We have no case directly on point, and so finding an exception here requires the development of the doctrine.  For the reasons stated, I do not believe that decision is necessary and would not reach this issue.

[3] MCL 324.73301 was amended after plaintiff filed this action in 2015.  See 2017 PA 39.

preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Stanton v Battle Creek*, 466 Mich 611, 616; 647 NW2d 508 (2002). The Court of Appeals explained that plaintiff reads "for the purpose of" as modifying the earlier phrase, "on the land of another." *Rott II*, 331 Mich App at 108. In other words, her interpretation requires that the plaintiff be "on the land of another . . . for the purpose of" engaging in recreational activities. See MCL 324.73301(1). Not so, the Court ruled. Because the last-antecedent canon applied—the Court never explained why—the word "for" modifies the immediately preceding phrase "a valuable consideration." *Rott II*, 331 Mich App at 109. "Therefore, the statute applies if a person does not pay the owner of the land a valuable consideration for the purpose of the recreational activity." *Id*.

But, in the second part of its discussion, the Court of Appeals properly applied our decision in *Neal* as an independent reason to reject plaintiff's argument that she was not at defendant's house "for the purpose of" zip lining. *Id*. at 109-110. There, we rejected an argument quite similar to plaintiff's here; specifically, that the plaintiff had not entered the property to participate in recreation but, rather, for the purpose of "a social visit." *Neal*, 470 Mich at 670 n 13. We explained that the RUA limited liability "for injuries to a person who is 'on the [owner's] land' 'for the purpose of' a specified activity," by which we meant the statutory list of recreational uses ending in the catchall, "any other outdoor recreational use . . . ." *Id*. (alternation in original); see also *id*. at 668 n 10. "Nothing in the act's language limits its application to individuals who *enter* the land for the purpose of a specified activity." *Id*. at 670 n 13. That initial purpose was irrelevant. "Rather, the act clearly applies to individuals who, at the time of the injury, are on the land of another for a specified purpose." *Id*. Applying *Neal*'s holding in this case, the Court of Appeals upheld

4

the trial court's determination that the statute applied because, although she originally entered defendant's property for a family gathering, at the time of the accident, plaintiff was on the land for the purpose of zip lining. *Rott II*, 331 Mich App at 110.

I agree with the majority here that the second rationale given by the Court of Appeals is consistent with *Neal* and represents the correct resolution of plaintiff's argument: she was on the land for the purpose of zip lining when the injury occurred. The Court's reliance on the last-antecedent canon was therefore unnecessary to its holding. Moreover, in stating that the RUA did not "require[] a person to be on the property for the purpose of the recreational activity," *Rott II*, 331 Mich App at 109, the Court's interpretation clashed with *Neal*'s statement that the RUA indeed applies when an individual is on another's land at the time of the accident for the purpose of participating in a "recreational use," *Neal*, 470 Mich at 670 n 13. See also *id*. at 667-668 ("The RUA simply states that an owner of the land is not liable [absent gross negligence or willful and wanton misconduct] to a person who injures himself on the owner's land if that person has not paid for the use of the land and that person was using the land for a specified purpose, [i.e., recreation]."). For these reasons, I agree with the majority that we should vacate the first part of the Court of Appeals' discussion of this issue.

### B. "ANY OTHER OUTDOOR RECREATIONAL USE OR TRAIL USE"

#### 1. THE *EJUSDEM GENERIS* CANON

I disagree, however, that zip lining falls outside the scope of the phrase "any other outdoor recreational use . . . ." MCL 324.73301(1). Generally, when interpreting a statute, we start with the ordinary meaning of the terms at issue. *TOMRA of North America, Inc v Dep't of Treasury*, 505 Mich 333, 339; 952 NW2d 384 (2020). In this case, the key word

5

is "recreational." The definition we have applied to this statutory term in the past is " 'a means of refreshment or diversion[.]' " *Otto v Inn at Watervale, Inc.*, 501 Mich 1044, 1045 (2018), quoting *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "recreation"). It is clear, as the Court of Appeals concluded, that the zip lining was done for refreshment or diversion, and it therefore fits within the ordinary meaning of "recreational." If that were all there is to it, the answer would be clear.

But a wrinkle arises when we consider the context in which the phrase "any other outdoor recreational use" is used. In particular, the phrase consists of general words that follow a list of specific recreational uses. When a statute is set up that way, the general terms sometimes bear a restricted meaning—one that is less comprehensive than their literal meaning. This interpretive principle is known as the *ejusdem generis* canon:

> "[Ejusdem generis] is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated." [*Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000), quoting *People v Brown*, 406 Mich 215, 221; 277 NW2d 155 (1979) (alteration in original).]

Put differently, the list of similar items leads a reasonable reader to expect any catchall to apply only to things that resemble the items on the list. *United States v Daddato*, 996 F2d 903, 904 (CA 7, 1993). Otherwise, "when the tagalong general term is given its broadest application, it renders the prior enumeration superfluous." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), pp 199-200; see also 2A Sutherland, Statutory Construction (7th ed), § 47:17 ("If the general words are given their full and natural abstract meaning, they would include the

6

objects designated by the specific words, making the latter superfluous."). *Ejusdem generis* thus addresses the situations in which the ordinary meaning of the catchall—the meaning a reasonable reader would discern—is different than the literal, definitional meaning of the catchall. Slocum, *Ordinary Meaning: A Theory of the Most Fundamental Principle of Legal Interpretation* (2015), pp 186-187. For instance, consider two different signs: (a) "No dogs, cats, birds, or other animals allowed" and (b) "No animals allowed." *Id*. at 197. Both signs have the same literal meaning, but the "other" clause in (a) "has a conventional meaning that is stereotypically exemplified through the other items on the list." *Id*. at 198. Had the drafter wanted the full literal meaning, he or she could have simply used (b) without the list. *Id*.

Although the canon might reflect linguistic realities, the gap between ordinary and literal meanings poses a significant problem for courts, one that cautions against overuse of the canon. This gap means that the restrictions on the general term are unexpressed. By failing to be explicit, a legislature leaves courts with the challenging task of inferring the implicit limitations on the scope of the catchall. See Hills, *The Problem of Canonical Ambiguity in* Ali v. Federal Bureau of Prisons, 44 Tulsa L Rev 501, 504 (2009) (observing that the doctrine requires a court "to infer some unwritten limiting principle from a series of specific terms").

Discovering a limiting principle often proves difficult. At a broad level, a court might ask itself why, if the list of enumerated items is meant to display a characteristic or category that the legislature meant to capture, did the legislature not expressly mention the characteristic or category? See *Ordinary Meaning*, p 191; Sinclair, *Law and Language: The Role of Pragmatics in Statutory Interpretation*, 46 U Pitt L Rev 373, 411-412 (1985).

7

As then Judge Brett Kavanaugh has noted, the absence of a legislatively prescribed limitation cautions against reading too much into the statute. See Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv L Rev 2118, 2160 (2016) (book review) ("It seems to me that we have to be wary of adding implicit limitations to statutes that the statutes' drafters did not see fit to add."). More concretely, what makes the canon tricky is the need to discern a relevant commonality among the specific items. *Ordinary Meaning*, p 187. Judges must undertake the "very indeterminate task" of "com[ing] up with their own sense of the connective tissue that binds the terms in the statute," i.e., what characteristics make the enumerated items similar. *Fixing Statutory Interpretation*, 129 Harv L Rev at 2160-2161. Usually, there are "multiple ways in which the general catchall term . . . can be given limited meaning." *Ordinary Meaning*, p 187. On top of that, nothing in the canon's usage specifies how broadly or narrowly to characterize the common class embraced by the enumerated items. See generally *Reading Law*, p 207.

As a result, courts have substantial "flexibility to frame the classification . . . ." *Ordinary Meaning*, p 198. A close examination of the listed items and the general terms is necessary, but not often sufficient. Cf. *Reading Law*, p 207. Consequently, courts are forced to consider the purpose of the statute. See *id*. at 208 ("Often the evident purpose of the provision makes the choice [of classification] clear."); Eskridge, *Interpreting Law: A Primer on How to Read Statutes and the Constitution* (St. Paul: Foundation Press, 2016), pp 77-78 (noting that application of the canon can be "tricky" and might require resort to "statutory purpose"); *The Problem*, 44 Tulsa L Rev at 501 (arguing that interpretive canons like *ejusdem generis* "require[] inquiry into extra-textual statutory purpose"). And while purpose can sometimes be gleaned from a careful reading of the text, see *People v Wood*,

506 Mich 114, 146 & n 44; 954 NW2d 494 (2020) (VIVIANO, J., dissenting), it can easily lead to sweeping assertions of legislative goals that bear little relation to the text itself, cf. *Perkovic v Zurich American Ins Co*, 500 Mich 44, 53; 893 NW2d 322 (2017) (noting that reliance on a statute's "perceived purpose . . . runs counter to the rule of statutory construction directing us to discern legislative intent from plain statutory language"). In light of these concerns, some have suggested "tossing the ejusdem generis canon into the pile of fancy-sounding canons that warrant little weight in modern statutory interpretation." *Fixing Statutory Interpretation*, 129 Harv L Rev at 2161.

I would not jettison the canon because, as discussed, it rests on a sound linguistic footing. But the difficulties in applying it should make us cautious. That is why even its proponents recognize that the canon is not always applicable to a list followed by a catchall. In this vein, we have noted that even when a statute contains this formulation, the canon should apply to restrict the scope of the general phrase "only where the specific words relate to subjects of a single kind, class, character or nature[.]" *In re Mosby*, 360 Mich 186, 192; 103 NW2d 462 (1960). "Where the language used, considered in its entirety, discloses no purpose of limiting the general words used, the rule of *ejusdem generis* may not be invoked to defeat or limit the purpose of the enactment." *Id*. Moreover, it is not always necessary to find the relevant limiting similarity in order to resolve the case at hand. *Reading Law*, p 208. For example, the last time the Court considered the canon's application to the RUA, we decided it was "unnecessary to define the outer parameters of the common class" because the activity at issue—beach play—fit within the catchall no matter how the catchall could be reasonably limited by the list. *Otto*, 501 Mich at 1045 n 1.

9

## 2. APPLICATION

The majority recognizes that the "diversity" of the enumerated activities in MCL 324.73301(1)—"fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use"—makes it difficult to discern a common characteristic. Nonetheless, the majority offers two limitations: "(1) the activity traditionally could not be engaged in indoors and (2) the activity requires nothing more than access to the land—i.e., permission to be present and not trespassing—to engage in the activity or use." I would first note that the limitation to traditional outdoor activities is irrelevant to this case given that the majority concludes that zip lining is a traditional outdoor activity.[4] Moreover, this limitation is vague. At what point in time do we consider the activity's traditional form, and how do we know what is traditional versus nontraditional?[5]

---

[4] Consequently, the majority's discussion of this limitation is unnecessary to its decision, and it is therefore nonbinding dicta. See *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011).

[5] I question, too, whether this limitation accurately captures a common characteristic among all the enumerated items. Motorcycle races were occurring indoors by at least the early 1970s, see Encyclopedia Britannica, Inc., *Motocross* <https://www.britannica.com/sports/motocross> (accessed July 21, 2021), contemporaneously with the amendment adding motorcycling to the RUA, see 1974 PA 177. If "tradition" is measured simply by the relevant practices at the time of enactment, then it is not the case that motorcycling was traditionally performed outdoors. Of course, by "tradition," the majority might mean that the activity *usually* had to occur outdoors with a certain frequency at the relevant point in time. And perhaps under this construction, not enough indoor motorcycling occurred. But if so—and I wonder how such a thing could even be measured—this demonstrates how vague the "traditional" requirement is and how far this interpretation is from the statute's text. The majority notes that the fact that indoor races occurred in the 1970s does not change motorcycling's "traditional and historical roots." Yet since motorcycling was added to the RUA in 1974, it would seem that the

With regard to the second limitation, the majority opines that the enumerated items are activities "that one can enjoy with nothing more than access to the land or water" and that while structures such as deer blinds or docks might enhance the activities, "these modifications are not prerequisites to engaging in the activity." The majority cannot possibly mean what it says here. One cannot go motorcycling or snowmobiling simply by accessing land—one needs to bring a motorcycle or snowmobile onto the land. Nor does one typically hunt without a weapon, fish without a pole, or camp without a tent (or other equipment). The majority instead seems to mean that these activities do not require artificial structures be constructed on the land, nor do they require modifications or enhancements to be made upon the land. It is under this rationale that the majority resolves the case, finding that zip lining does not fall within the catchall because it requires the installation of "human-made zip-lining equipment on the land . . . ."

I cannot agree with the majority's contrived limitation. To be sure, it has some superficial appeal in that all the enumerated activities can, generally speaking, be undertaken without any artificial structures on or modifications to the land. But the *ejusdem generis* canon does not task courts with finding *any possible* commonality among the enumerated items but only those that would occur to a reasonable reader as sensibly applying to and limiting the catchall. Cf. *Daddato*, 996 F2d at 904. There may be many unifying characteristics of the listed items that, like the majority's proffered limitation, do not translate to a coherent limitation on the catchall. Under the majority's interpretation, extensive structures and modifications to the land are allowed as long as, in some

_____

practices occurring in that decade would form part—perhaps the key part—of the relevant history and tradition.

11

theoretical sense, they are not necessary. But if they are needed to engage in the activity, then even the most minor modifications—like the ones here—operate to exclude the activity from the RUA.

For example, motorcycling has long used tracks that required relatively elaborate construction. See, e.g., Schonauer, *The Early, Deadly Days of Motorcycle Racing*, Smithsonian Magazine (April 2011) (discussing board-track courses and other motorcycle riding venues), available at <https://www.smithsonianmag.com/arts-culture/the-early-deadly-days-of-motorcycle-racing-787614/> [https://perma.cc/W8CL-BE4B]. Even less-formal tracks might contain groomed trails, artificial mounds, or boundary markers. Indeed, given that the RUA applies to, among other things, large, undeveloped tracts of land, one wonders how a person can go motorcycling or snowmobiling unless a path is cleared. Anglers often cast their lines from large docks, and hunters frequently are camouflaged by deer blinds.

Presumably, under the majority's view, the RUA would apply to injuries that occur in those places even though they might involve artificial structures being affixed to the land or modifications being made to the land. But, by contrast, the majority would not extend the RUA to someone injured gliding along a rope attached to two trees. The juxtaposition of these two scenarios is, to my mind, jarring. Activities such as motorcycling and snowmobiling involve significant artificial structures or modifications to the land and dangerous "human-made" equipment, while zip lining involves, in essence, a cable and the equipment needed to attach it to natural features of the land.

Under the majority's logic, the distinction is that the motorcycling and snowmobiling could have occurred without the artificial features or modifications but the

12

zip lining could not. But this is not a very persuasive distinction when one compares the actual "artificial" features and modifications. To motorcycle on land, one needs at least a motorcycle. To zip line, one needs a rope or cable and equipment to glide on it. The scope and danger of the artificial materials required to motorcycle on land vastly exceed those needed to zip line, and the need for a path clear of debris is the same for both activities.

Nor can I see why it matters that the zip line is attached to trees on the land. The majority's reasoning would seem to mean that a person who hangs a hammock or puts a homemade tire swing around a tree branch—recreational activities that closely resemble beach play, are done as a means of refreshment or diversion, and would seemingly be covered under the RUA, see *Otto*, 501 Mich at 1044—has installed an artificial structure upon the land to engage in an activity (hammocking or swinging) that could not be done without the structure, i.e., purely by accessing the land. Putting up a zip line might be moderately more involved than a hammock or swing, but the difference is one of degree. The pictures of the zip line here show a cable stretched between two trees, with a thin belt of wood circling the tree where the cable is wrapped around it. Defendant testified that he ordered a zip-line kit online containing a bungee cord stop, a trolley, hardware, and a cable; additional pieces were added over time, some for aesthetics. It required a few rudimentary tools to put up and a mechanism for measuring the slope of the line. There is no indication that the installation was lengthy, and neither building permits nor city inspections were required according to defendant. Nothing indicates that the zip line would be difficult to remove.

From this perspective, the zip line at issue here is not much different, in kind, from the types of tree swings or hammocks long used for recreation. No permanent structures

13

were erected, and little more was done than would be required to hang a hammock or a swing. Although zip lining perhaps requires more artificial materials, the zip line relied on the land just as much, if not more than, a hammock or swing. The zip line was anchored to trees and used the land's natural elevation to propel the individual. The activity, in other words, could not occur without the natural surroundings, and the artificial equipment had no use or function without the land itself.

For these reasons, I cannot agree that the RUA contains the majority's second limitation regarding activities that require only bare access to the land. This limitation does not arise from a relevant common feature of the enumerated items. With the possible exception of sightseeing and hiking, all the listed activities involve the use of artificial equipment or some modifications made to the land.[6] Imposing this limitation leads to the head-scratching result that the RUA covers motorcycling, snowmobiling, or hiking on a human-made course or cleared trail, but would not cover swinging from a rope slung over a tree branch simply because one could conceivably ride or hike without the course or trail but could not swing without attaching the rope to a tree or other natural feature.[7]

I would instead conclude that zip lining falls within the RUA's catchall and is not excluded from any conceivable limitation arising from the enumerated list of recreational

---

[6] And even then, many people hike or sightsee using marked trails.

[7] As evidence that zip lining is not covered by the RUA, the majority notes that zip lining was not established as a recreational activity when the most recent amendments were made to the statute. It goes without saying, however, that the law's expected applications at the time of its enactment do not exhaust its meaning. See *Oncale v Sundowner Offshore Servs, Inc*, 523 US 75, 81-82; 118 S Ct 998; 140 L Ed 2d 201 (1998). Under the majority's logic, the RUA's protections would be frozen in the recreational world of the mid-1970s, at the latest.

14

activities. The parties have not offered any plausible limitation, and the majority—which adopts an interpretation not put forward by any party—has not either. The backyard zip lining that occurred here is no more removed from the land than is fishing on a dock or hunting in a deer blind. In fact, as noted, the zip lining here used the land in ways that fishing and hunting do not. Thus, in this case, as in many others involving the *ejusdem generis* canon, it is unnecessary to decide whether any such limitation on the catchall exists. See *Otto*, 501 Mich at 1045 n 1. Because no limitation applies and zip lining falls within the meaning of "any other outdoor recreational use or trail use," I would conclude that the statute applies here.

In reaching the opposite conclusion, the majority seems to construct its limitation out of concerns that the RUA would otherwise be too expansive. The majority says that "if zip lining were within the scope of the RUA, it would be difficult to conceive how the RUA's catchall provision could have any reasonable limitations." It then trots out a parade of horribles—the RUA's potential extension to trampoline jumping, hopscotch, and jumping rope—which do not seem so horrible. But in any event, we are not in the business of constructing "reasonable limitations" to statutes—rather, we must interpret the limitations the Legislature imposed. And when those limitations arise, if at all, from a list of specific items preceding a general catchall, we should be chary of leaning too heavily on the *ejusdem generis* canon. That canon does not always provide determinate results, and consequently, its use calls for more circumspection than the majority has shown today.

15

### III. CONCLUSION

For the reasons above, I do not believe we need to decide whether or how the *ejusdem generis* canon applies in the present case because, under any conceivable limitation, zip lining would fall within the plain meaning of the RUA's catchall. And because the Court of Appeals appropriately resolved the merits of the interpretive issues, I would simply vacate as unnecessary its application of the law-of-the-case doctrine. Because the majority takes a different approach, I dissent.

David F. Viviano
Brian K. Zahra

16